June, 1811.

ARNOLD
v.
SMITH.

---

DANIEL ARNOLD *against* LUTHER SMITH.

*In an action by the owner of a vessel against the master, for putting on board, while the late embargo and non-intercourse laws of the United States were in force, certain articles of merchandize, without a permit, contrary to law, and in violation of his duty, in consequence of which the vessel was seized by a ship of war of*

MOTION for a new trial.

This was an action on the case. The declaration stated, that in *July*, 1808, the plaintiff chartered the brig *Celia*, whereof the defendant was master, on freight, for a voyage to the *West-Indies*, and back again ; that at the same time, the plaintiff put on board the brig, by *permit* from the custom-house, of his own property, a large quantity of lumber, consisting of staves, heading, hogsheads, shooks, boards, &c. of the value of 800 dollars ; which property was intended to be transported to the *West-Indies*, where, from the avails of which, a return cargo was to be put on board, and transported to the *United States ;* that the plaintiff directed the defendant not to receive, or suffer to be put on board the brig, any property whatever, not included in the permit, as such proceeding would be a violation of law, and subject the vessel and cargo to seizure and condemnation ; with which direction, the defendant agreed to comply ; that the defendant also

*the United States,* brought to *New-York* for examination and trial, and there, with her cargo, libelled and condemned, on account of such violation of law, whereby the voyage was defeated ; it was held, that proof of such libel and condemnation, by *record* evidence, was essential to a recovery by the plaintiff, although if that allegation had been omitted, the other facts stated, might have furnished a good cause of action, depending upon *parol* evidence.

agreed with the plaintiff, that he would, in all respects, perform his duty, as master of the brig, skilfully and faithfully. It was then averred, that the defendant, in breach of his duty and engagememt, permitted his servant, privately, and without the plaintiff's knowledge, to put on board the brig, a quantity of *unlicensed* flour, butter, and other articles of merchandize, and that the defendant caused or permitted such unlicensed articles to be privately stowed in the brig; that after the brig had commenced her voyage, and had proceeded about sixty miles beyond *Montaug-Point*, the defendant then being master, she was arrested and boarded by the *Chesapeake*, a ship of war of the *United States*, *Stephen Decatur*, commander, and on search, the flour, butter, &c. were found by the crew of the *Chesapeake ;* and that in consequence thereof, the defendant and the crew were taken out of the brig, and she was brought into the city of *New-York*, for examination and trial.

The declaration then averred as follows "and before the District Court of the district of *New-York*, the said brig and cargo were libelled and condemned, *for, and on account of said violation of law ;* and afterwards, an appeal was taken to the Circuit Court of said district, from said decree of condemnation, and on application to *Albert Gallatin*, secretary of the treasury, the said brig and cargo were liberated, on payment of rising of five hundred dollars."

It was then averred, that at the time of the liberation of the brig and cargo, the acts relating to the embargo and non-intercourse, were in full force, and that no permit could be obtained to proceed on the voyage, and that the same was terminated at the city of *New-York ;* and that the lumber, by frequent handling and time, had become broken and ruined ; and that by the misconduct and fraud of the defendant, the object of the voyage was totally defeated.

On the trial, the plaintiff offered no evidence whatever in proof of the allegations in the declaration, relating to the libelling and condemnation of the vessel and cargo ; but offered, by parol testimony to prove the other facts stated therein : and particularly, among other things, that the brig had

been seized for having on board the unlicensed articles before mentioned ; that the defendant permitted such articles to be put on board ; that for this cause, the brig was brought by the *Chesapeake*, to *New-York*, and was there detained ; whereby the voyage was frustrated.

The defendant objected to the admission of this evidence, and contended, that the record proof of the facts of the libel, and condemnation of the vessel and cargo, and the payment of the money to obtain a liberation, was a *sine qua non ;* and that without this proof, although, all the other facts alleged in the declaration, were fully established, the plaintiff was not entitled to a recovery. The court adjudged the evidence offered by the plaintiff, to be inadmissible ; and were of opinion, that it was incumbent on the plaintiff to produce the record of the libel and condemnation of the vessel and cargo, and the payment of the money to obtain the order of restoration ; without which evidence, the plaintiff could not recover : And in conformity with this opinion, the court instructed and charged the jury ; who returned their verdict for the defendant accordingly. The plaintiff moved for a new trial, on the ground, that the court erred in rejecting the evidence offered by him, and for a misdirection ; which motion was reserved for the opinion of the nine judges.

*Hosmer*, in support of the motion. This is an action on the case, for fraud. It is admitted to be generally true, that *tort* and *contract* cannot be joined; yet, in cases where the *gist* of the action is *tort*, the declaration will not be vitiated, for the reason, that it alleges the transaction out of which the *tort* arose, to have originated in a contract between the parties. This is precisely our case ; and the principle is illustrated by the decisions not only in our own country, but in *England. Stoyel* v. *Westcott*, 2 *Day's Rep.* 418. *Pasley* v. *Freeman*, 3 *Term Rep.* 51. 56. 61. 64. *Coggs* v. *Bernard*, 2 Ld. *Raym.* 909.

The facts alleged in the declaration, exclusive of such as relate to the libel, condemnation and liberation of the vessel and cargo, furnish a good cause of action. The proof of

such facts by the record of the proceedings, was not therefore, a *sine qua non* ; and the plaintiff ought to have recovered without such proof ; and the testimony offered by him on the trial, ought to have been admitted.

If the whole of an averment may be stricken out, without destroying the plaintiff's right of action, it is not necessary to prove it. It follows therefore, of course, if there are other averments in the declaration which constitute a good cause of action, the plaintiff may be permitted to prove them. *Bristow* v. *Wright, Doug.* 665, 666. *Peppin* v. *Solomons,* 5 *Term Rep.* 496. *Williamson* v. *Allison,* 2 *East,* 446. 1 *Ventr,* 365. *Wilson* v. *Codman's Executor,* 3 *Cranch,* 193.

*Daggett,* contra.

EDMOND, J. (After stating the case.) The act of putting on board the brig, the flour and butter, and stowing them away privately, *without a licence,* in violation of his duty, &c. is the only act or neglect of the defendant, complained of by the plaintiff, in his declaration ; not merely the putting these articles on board, but the violation of law in doing it *without a licence,* is the gist of the action. But this neglect of the defendant, in what way soever established, could never entitle the plaintiff to recover, unless he can shew something more : He must not only allege and prove this fraudulent act of the defendant, but he must shew that he has sustained damage thereby. He, therefore, in his declaration, alleges, that the brig commenced her voyage, was seized by a ship of war of the *United States,* search was made, and the flour and butter found by the crew ; and in consequence thereof, that is, the flour and butter being found on board, without a permit, the defendant and crew were taken out of the brig, and that she was brought to the city of *New-York,* for examination and trial. Had the plaintiff then proceeded, as in the close of his declaration, to allege the detention of the vessel, the defeat of the voyage, and the destruction of his property, by the misconduct, breach of orders and fraud of the defendant, I see no reason why the plaintiff might not have been per-

VOL. V. W

June, 1811.

ARNOLD
*v.*
SMITH.

mitted to support his declaration by parol testimony, and, if the facts had been proved, to recover. But the plaintiff, not content with the averment, " that in consequence thereof, the defendant and crew were taken out of the brig, and she brought into *New-York*, for examination and trial," proceeds thus ; " and before the District Court of the district of *New-York*, the said brig and cargo *were libelled and condemned*, for, and on account of said violation of law,"&c. By this averment, the plaintiff shews, that there is record evidence,—evidence of a higher nature than that which he offers to the court,—of the existence of a fact, for which he contends, and the proof of which, is essential to his recovery in this action. And the plaintiff having made this averment, he ought not to be permitted to say, that no such proceedings were had, in the court of the *United States*, and resort to evidence of an inferior nature, to prove what the record, if produced, would of itself shew.

I am of opinion, therefore, that the charge to the jury was correct, and that a new trial ought not to be granted.

SMITH, J. By the plaintiff's own shewing, the vessel and cargo have been libelled and condemned ; and he wishes to shew, by other evidence than the record, that the vessel was seized for taking on board a certain quantity of flour and butter, not included in the permit, and for that cause, was brought, by the *United States'* ship *Chesapeake*, to *New-York*, and there detained until the voyage was frustrated.

I will not say, that the plaintiff could not have brought his action, after seizure, before either the libel or condemnation ; because the facts having taken place, which must inevitably end in condemnation, and the detention of the vessel having produced a present damage, it would be unreasonable to oblige the party to await the final issue, when, by that means, he might lose all hold on the defendant.

But that is not the present case : the plaintiff, by his own shewing, has waited, and now has it in his power to obtain record evidence, which will shew on what account the vessel was seized and condemned. To suffer him now to abandon

this, and introduce other evidence of a lower nature, would be unsafe. How do we know but that the plaintiff has inspected the record, and has ascertained, that the vessel was seized and detained on other grounds; and that this is the reason why he does not introduce it?

The presumption is always against a party, who conceals the best evidence in his power, and attempts to introduce that which is of a lower nature. There seems to be no accounting for this course of conduct, only upon the supposition, that the party finds the best evidence will operate against him.

This rule applies as well to actions founded in tort, as in contract; and it is equally necessary to introduce the *best evidence*, when it appears, that such evidence is as much in the power of the party, in the one case, as in the other.

MITCHELL, Ch. J., REEVE, TRUMBULL and INGERSOLL, Js. concurred in the preceding opinions.

SWIFT, J. In this case, the first question is, whether the allegation, " that the vessel was libelled before the District Court in *New-York*, and condemned for a violation of law, from which, an appeal was taken, and that on application to the Secretary of the Treasury, the vessel was liberated, on payment of rising of five hundred dollars," is material, and essential to be proved, to entitle the plaintiff to recover in this action?

To decide this question, the ground of the plaintiff's claim must be ascertained. The wrongful act done by the defendant, and which creates his liability to an action, is the suffering the unlicensed articles to be put on board the vessel, which exposed both vessel and cargo to seizure and condemnation. The injury to the plaintiff, is on account of the seizure. Here, then, was a wrongful act, and a consequent damage. The right of action instantly accrued, and the plaintiff was not bound to wait till the vessel and cargo were libelled and condemned, and a compromise effected with the

Secretary of the Treasury; for the right of action did not depend on these events.

Suppose the vessel, after the capture, had been lost on the passage to *New-York*, or destroyed in port, before libelled, without any blame imputable to the captors, no condemnation could have taken place, and there could have been no claim against the captors; yet, there can be no doubt of the liability of the defendant. Suppose, after the vessel had been libelled, the government had abandoned the prosecution, and released the vessel and cargo, or congress had remitted the forfeiture, and ordered the prosecution to cease, there can be no doubt, but that the defendant would have been liable for the damages sustained prior to the cessation of the prosecution. It is evident, then, that a condemnation of the vessel and cargo, for a violation of law, in taking on board unlicensed articles, was not essential to the plaintiff's right of action.

But, in the pleadings, there is no allegation of a final condemnation. It was contended in the argument for the defendant, that it appeared from the declaration, that there was record evidence of the violation of the law, and that it could not be proved by evidence of an inferior degree. But, it appears, that the decree of condemnation was appealed from; this destroyed its effect; of course, the record could furnish no evidence of the condemnation of the vessel and cargo, for a violation of law; it could only prove, that they had been libelled, and that the decree of condemnation was appealed from. It will not be pretended, that it was essential to the right of action to prove these facts.

To shew the effect of a compromise with the Secretary of the Treasury, we must consider the mode of proceeding. The party liable to a fine, penalty or forfeiture, may prefer a petition to the district judge, who shall report the facts to the Secretary of the Treasury; and he may remit or mitigate the fine, penalty or forfeiture, if, in his opinion, they shall have been incurred without wilful negligence, or intention of fraud, in the persons incurring the same. In this case, the defendant was not a party to the application, and therefore,

his liability could not be affected by it. Nor, will it be pretended, that such a compromise must be made, to give the plaintiff a right of action. The proceeding is merely a ministerial act. No judicial act is done ; no judicial decision is rendered, which is matter of record, and that can be proved by a copy of the record. The decision of the Secretary of the Treasury can only be, that there was no wilful negligence, or intention of fraud in the applicant. Nothing is done, which, in the remotest degree, can go to prove the guilt, the innocence, or the liability of the defendant in this action.

What, then, could this evidence have amounted to, if it had been produced ? Simply this, that the vessel and cargo had been libelled for a violation of law; that the decree of condemnation had been appealed from ; and that a compromise had been effected with the Secretary of the Treasury. It would have left the defendant at liberty to have contested every fact, on which his liability depended, as fully as if no proceeding had been had against the vessel and cargo.

What, then, results from this ? The court below required the plaintiff to prove, by a record which did not exist, a fact wholly immaterial to his right of recovery. They would not permit him to prove the material facts in his case, until he had produced evidence that did not exist, of facts that were immaterial. It requires no argument, to prove the absurdity of this novel doctrine.

I think the allegation was not essential to support the plaintiff's action, in another point of view. Suppose the declaration had only averred, that the defendant, being master of the vessel, had agreed to perform his duty faithfully, and would not receive, or suffer to be put on board, articles prohibited by law ; and that he did suffer his servant to put on board, articles prohibited by law ; by which, he subjected the vessel to seizure and condemnation ; in consequence of which, they were seized by a public ship, the defendant and crew taken out, and the vessel carried into port, for examination and trial; that the voyage was defeated, and the cargo injured. Such a declaration would clearly have been good ; of course, the allegation is immaterial.

If the allegation be immaterial, then, a second question arises, whether the plaintiff is bound to prove it ?

The rules respecting the proof necessary to support an action, have been long and clearly settled. In actions founded on *contract*, the contract must be proved precisely as laid; but if the whole of an averment can be stricken out, without destroying the plaintiff's right of action, it is not necessary to prove it. In actions founded on *tort*, it is not necessary to prove the facts precisely as stated; it is sufficient to prove the substance of them. It is not necessary for the plaintiff to prove his whole case, or all the particulars stated in his declaration; if he proves so much as gives him a good cause of action, he is entitled to recover.

If this be considered as an action founded on a contract, it was unnecessary to prove the allegation in question; for if wholly struck out, it could not destroy the plaintiff's right of action. If it be considered as founded on tort, it was unnecessary to prove it, because the plaintiff had proved enough beside, to entitle him to recover.

Although this allegation was not material to the plaintiff's right of action, yet it might possibly have been considered as laying a foundation for special damages: for, supposing that the defendant permitted the unlicensed articles to be put on board the vessel, by reason whereof, she was subjected to seizure and condemnation, and the plaintiff had no means of liberating her, but by a compromise with the Secretary of the Treasury, and by paying 500 dollars, this might have been an item of special damages to be allowed by the jury.

Admitting, then, that the allegation contained a ground for special damages; a third question arises, whether the plaintiff was bound to prove it ? General damages need not be alleged in the declaration. Special damages must be alleged, to admit the plaintiff to prove them; and must be proved, to entitle him to recover. Several grounds of damages may be alleged in the same declaration, both general and special. In this case, the plaintiff has not only stated facts, which will warrant the recovery of general damages, but he has stated several grounds of special damage, to wit, that the vessel and cargo

were libelled and condemned ; that the decree was appealed from ; that the sum of five hundred dollars was paid on a compromise with the Secretary of the Treasury, for their liberation; that the cargo was injured, and that the voyage was frustrated.

Where several items of damage are stated, it is not necessary to prove them all, to enable the plaintiff to recover any part. No principle is clearer than this, that if he can prove any part of the damages stated, he shall recover *pro tanto*. It might as well be said, that the plaintiff could not have recovered in this action, if he had not proved the injury to the cargo, although he proved the other items of damage, as to say, that he cannot recover, because he did not prove the one in question. Nor will it be contended, when the facts will warrant the recovery of general damages, and special damages are alleged, that a failure to prove the special damages, will preclude the party from recovering general damages.

I am, therefore, of opinion, that a new trial ought to be granted.

BALDWIN, J. I am of opinion, that the Superior Court were not correct in rejecting the evidence offered, and that a new trial ought to be advised.

This is not an action founded on contract. It is to recover damages for a fraudulent breach of trust. It sounds in damages, and several items are specified, *viz* . the siezure on the high seas ;—the forcible return to *New-York* ;—*a libel and condemnation* ;—*the terms of release* ;—the ruin of the cargo, and loss of the voyage.

It will be admitted, I presume, that it was not necessary, to entitle the plaintiff to recover, that he should state every injurious consequence following the siezure ; that if the averment respecting the *libel*, *condemnation*, and *release*, had not been made, the declaration would still have been good ; and that a recovery might have been had for the other causes stated. It will also be admitted, that the evidence offered, tended directly to prove all the other facts alleged. We are

then, led to enquire, whether the plaintiff, having made the averment in question, was bound to prove it ? I readily admit, that if this had been an action on contract, it would have been incumbent on the plaintiff to prove the contract as laid. But in an action of fraud, the plaintiff is not bound to prove all the fraud alleged, nor all its consequences, any more than he is bound to prove all the aggravating circumstances alleged respecting a trespass. He must, indeed, prove enough to entitle him to his action ; and the amount of damages must be limited by the extent of the injury proved. That which is alleged and not proved, is as though it were not stated ; and no other fact can be presumed, in such case, from withholding the proof.

In my opinion, the plaintiff has stated a good cause of action, without the averment in question ;—and I think he ought to have been permitted to prove it.

New trial not to be granted.