PETERS *et al.* v. JONES *et al.*

1. Equity: SPECIFIC PERFORMANCE OF PAROL CONTRACT. Where a father, in consideration of services performed by his son, verbally promises and agrees to convey to him certain lands, and on the faith thereof the son takes possession of and makes valuable improvements on the land, the father, his heirs and devisees will be estopped from denying his title, and a specific performance of the agreement will be decreed against them.

2. Statute of limitations: TENANTS IN COMMON. Where the right of action of tenants in common would be barred by adverse possession

or the statute of limitations, except as to one who is within an exception or saving clause of the statute, as for instance a minor, the right of the others is not thereby saved.

3. Adverse possession: DENIAL OF TRUST. Where, in case of an implied or resulting trust, the trustee or person holding the legal title, assuming ownership, sells and conveys the land to a third party, this amounts to a repudiation of the trust, and the possession of the grantees, claiming under such conveyance, will be regarded as adverse.

*Appeal from Lee District Court.*

MONDAY, DECEMBER 18.

ACTION to enforce an alleged trust of real property. The petition states that the plaintiff Margaret A. Peters (formerly Margaret A. Ritchey) is the widow of John B. Ritchey, deceased, who died intestate in Lee county, Iowa, on the 27th day of July, 1852; that the other plaintiffs, James M. Ritchey and Joel C. Ritchey, are children and heirs at law of said deceased; that said John B. Ritchey was a son of James Ritchey, who died March, 1869, in Clark county, Missouri, after disposing of his property by will; that the defendants are the devisees of said James Ritchey, deceased, and that said James M. and Joel C. are by said will bequeathed one hundred dollars each, which they decline to accept; that plaintiff Margaret and said John B. Ritchey intermarried in 1844, and entered upon and took possession of the east ½ of north-east ¼ of section 2, township 68 north, of range 5 west, in Lee county, Iowa, as the property of said John B.; that said land was the property of said John B. Ritchey, he having paid the consideration therefor, but that for convenience the title was taken in the name of his father, the said James Ritchey; that at the time said John B. took possession of said land it was unimproved prairie; that said John B. made large and valuable improvements thereon, and cultivated and used the same as his own property, with the

knowledge and consent of said James Ritchey; that there being no suitable building spot on said land near the public highway, said John B. purchased about a half acre of land adjoining the same on which he erected a brick dwelling-house in which he and his family resided up to the time of his death in 1852. It is further alleged, that the title to said land was, at the time of the purchase thereof, taken in the name of James Ritchey in trust for his son John B., who furnished the purchase-money, " or that said James Ritchey, if he advanced the money to pay for said land, held it in trust by agreement with said John B. Ritchey, to pay him for work and labor which the said John B. Ritchey had done for him after he arrived at the age of majority, and through his natural love and affection," and by a mutual agreement and understanding between them that if said John B. Ritchey would go on and cultivate and improve said land, then said James would convey the title thereof as John B. should direct.

The answer admits the marriage of Margaret A. Peters with John B. Ritchey, as alleged; that he died on the 27th day of July, 1852; that the other plaintiffs are the sons of said deceased and Margaret A. Peters; that said John B. Ritchey was a son of James Ritchey, deceased, and that Delilah Jones, Melinda A. Powell and Martha Robinson are surviving daughters of James Ritchey, deceased. All the other material allegations of the petition are denied, and the statute of limitations pleaded in bar of the action.

The cause was tried by the first method in equity. Judgment for plaintiffs for forty acres of the land in controversy. Defendants appeal.

*G. M. Casey* and *Halls & Baldwin* for the appellants.

*John Van Valkenburg* and *McCrary, Miller & McCrary* for the appellees.

MILLER, J.— The evidence shows that the land in controversy was purchased by and conveyed to Harvey H. Ritchey and James Ritchey March 24, 1840, for the consideration of one hundred and fifty dollars, and that on the 1st day of April, 1851, Harvey H. Ritchey and wife conveyed all their right, title and interest therein to James Ritchey.

<div style="float:left; margin-right:1em;">

1. EQUITY: specific performance of parol contract.

</div>

One of the alleged grounds upon which plaintiff claims that James Ritchey held the title to the land in trust for his son, John B. Ritchey, is that the latter paid or furnished the purchase-money. This allegation the evidence fails to establish. There is no direct evidence of the fact. The plaintiff, Margaret A. Peters, who was the wife of John B., testifies as follows : " John B. Ritchey, my husband, furnished the money ; I always heard him say that his father had bought this tract and other land together ; that the money was partly his and partly his father's that bought the land, and I know he helped his father pay for it ; have often heard his mother say so ; this I know positively." She further testifies that her husband and his father had to pay for some of the land twice, and that her husband borrowed the money of Jairus Neal to pay with. The first part of this testimony is objected to because hearsay, which it undoubtedly is, and clearly incompetent ; and the statement that her husband borrowed money to pay on the land, is directly disproved by Jairus Neal, a witness for plaintiff.

Elkanah Perdew, a witness for plaintiff, says that in 1841 or 1842, John B. Ritchey applied to him to borrow $100 ; that James Ritchey came with John B. and offered to become his surety for the money, and that they both stated that the money was to make a payment on John B.'s land ; the witness does not state that the money was loaned by him, but leaves the inference that it was not. This is all the evidence tending to show that John B. Ritchey furnished any of the purchase-money for the land. It

certainly falls very far short of proving the fact, which, in order to divest the legal title, should be established by clear and satisfactory proof, and should be "such as goes distinctly to prove the facts necessary to create a resulting trust." *Noel* v. *Noel*, 1 Iowa, 423.

The other ground upon which a trust is claimed is that if James Ritchey did advance the money to purchase the land, he did so and held the title in trust for John B. Ritchey under an agreement to pay the latter for work and labor performed by him for his father after he became of age, and through natural love and affection, and that under said agreement John B. was to go on and cultivate and improve the land as his own, and his father would convey the same to him when requested.

In our opinion these averments are, in respect to part of the land, clearly and satisfactorily proved by the evidence. It is shown that John B. Ritchey labored for his father upon the farm of the latter for four or five years after he became of age ; that he was a good and industrious hand and of temperate habits; that when John B. Ritchey was married in 1844, he entered upon the possession of the south forty acres of the tract in dispute, and broke and fenced it, built thereon a barn, brick smokehouse, dug a well and planted an orchard, and purchased a half acre of land contiguous thereto for a building spot and erected thereon a brick dwelling-house, in which he and his family resided ; all this was done with the full knowledge and acquiescence of James Ritchey, who resided all this time on the farm adjoining this land. The evidence also shows that with the full knowledge of James Ritchey, his son John B. held possession, improved, cultivated and used the land in all respects as his own property from the time he first entered thereon until the time of his death in 1852, a period of about six years; that James Ritchey repeatedly and on divers occasions admitted to different persons that the land thus improved

and occupied by John, was John's land, and on one occasion, after the death of John, he stated that the title to this land that had been in John's possession had never been transferred to John, but was yet in his own name; that he always intended it for John and intended it yet for his heirs, but thought if he kept the land in his own name he could control it better, and after the children were of age he would convey it to them. When John B. Ritchey was on his death-bed, James Ritchey promised him to convey the land to Margaret — John's wife. He also promised to procure the land, on which the dwelling-house stood, to be conveyed to Margaret by Mr. Briggs, of whom it had been purchased by John B. Ritchey, but the title to which was still held by Briggs. This latter request James Ritchey complied with by procuring a conveyance to be made to Margaret by Mr. Briggs. But he never conveyed the farm as requested.

Although the evidence of the agreement, alleged in the petition, is principally circumstantial, yet, taking all the circumstances developed by the testimony, they are entirely satisfactory. They are, as we think, entirely inconsistent with any other hypothesis. While the entire agreement is not distinctly proved, by *direct* evidence, it is as satisfactorily established by circumstantial evidence, and our conclusion is that in consideration of work and labor performed by John B. Ritchey, after his majority, his father agreed and promised that he would convey the same to him, and that on the faith of such agreement John took possession of the land as his own and erected thereon valuable and permanent improvements.

Upon this state of facts a court of equity will hold James Ritchey estopped from asserting his naked legal title, and will compel a specific performance. John B. Ritchey having executed his part of the parol agreement and entered into possession, and made valuable and permanent improvements on the land, in the confidence that

James Ritchey would perform on his part by conveying on request, it would be a fraud on John B. Ritchey and his heirs to suffer a refusal on the part of James Ritchey to work to their prejudice. In support of this doctrine see the following authorities: 2 Story's Eq. Juris., §§ 759, 761, 788, and notes; *Rerick* v. *Kern*, 14 Serg. & Rawle, 271; *Folke* v. *Beidleman*, 6 Watts, 339; *Hamilton* v. *Hamilton*, 4 Barr, 195; *City of Pittsburgh* v. *Scott*, 1 id. 317; *Lafevre* v. *Lafevre*, 4 Serg. & Rawle, 243; *Carr* v. *Wallace*, 7 Watts, 394; *Reicker* v. *Kelly*, 1 Me. 117; *Syler* v. *Ekhart*, 1 Binn. 378; *Price* v. *Case*, 10 Conn. 375; *Hall* v. *Chafees*, 13 Vt. 157; *Benedict* v. *Benedict*, 5 Day, 158; *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 354; *Storrs* v. *Barker*, 6 id. 166; *Mahaska County R. R. Co.* v. *The D. V. R. Co.*, 28 Iowa, 437; *Lucas* v. *Hart*, 5 id. 415, and cases cited; *Foster* v. *Bigelow*, 24 id. 379; 1 Sugd. on Vend. & Pur. (9th ed.), pp. 135, 136, and cases cited in notes.

A court of equity will, in such case, decree specific performance. Id.

The defendants, who are devisees of James Ritchey, with full knowledge of the facts that John B. Ritchey was in possession of the land in his life-time as owner, and had erected permanent and valuable improvements thereon, can occupy no better petition than their testator. They took under the will subject to the same equities that existed against him in respect to this land.

II. We are next to inquire whether the action is barred by the statute of limitations as to any or all of the plaintiffs.

As before stated, John B. Ritchey died in July, 1852. After his death his father, James Ritchey, took possession 2. STATUTE OF LIMITATIONS: tenants in common. of the land in dispute, and from that time until April, 1858, he remained in possession by himself and tenants, and did not at any time allow the plaintiffs any of the proceeds of the

land. The widow of John B. remained in the dwelling-house where her husband died for a year or two, when she sold it and moved away. At the time this action · was commenced the plaintiffs Joel C. Ritchey was in the 24th, and James M. Ritchey was in the 22d year of his age. James M. Ritchey, Sr., conveyed the disputed land to his son, Houston H. Ritchey, by warranty deed, April 5, 1858, who took possession, and he and his father removed the smoke-house, orchard and barn to another part of the forty acre tract. Houston H. Ritchey died intestate July, 1865, and left neither widow nor children, so that his father, James Ritchey, inherited the legal title to the land, the mother being also dead.

It will be observed that this action was commenced within one year after James M. Ritchey, one of the heirs of John B. Ritchey, attained the age of twenty-one years, but more than that length of time after Joel C., his brother, arrived at that age.

It is insisted by appellant's counsel that these parties being joint tenants, and as the statute gives a minor one year after majority in which to bring his action, the right of action is saved to both joint tenants. Under the statutes of this State, however, the plaintiffs are tenants in common. (See Rev., §§ 2436, 2437 2414.) There would be no survivorship in the event of the death of one of the heirs. Each may bring an action to recover his own interest without joining his co-tenant.

In the case of tenants in common where there has been an adverse possession during the time limited by the statute, one of whom is within the saving clause of the statute, the right of the others is not thereby saved. *Jackson* v. *Brandt*, 2 Caines, 169; Angell on Lim., § 484; *Moore* v. *Armstrong*, 10 Ohio, 11; *Bronson* v. *Adams*, id. 135. It has been held in cases of joint-tenancy, where all must join in the action, that if the action is barred as to one it operates as a bar to all. *Mar-*

*stetter* v. *McClean*, 7 Cranch (U. S.), 156. But in the case of tenants in common any one may bring a separate action, or if they all join in the action the court may render judgment for or against one or more of them. Rev., §§ 3121, 3122, 3123.

So that if the action would otherwise be barred as to Joel C. Ritchey, it is not saved by reason of the disability of James M. Ritchey. As to the latter the action was not barred at the time it was commenced (Rev., § 2747), he having, at least, one year after he became twenty-one years of age in which to commence his action.

It is not claimed by plaintiffs' counsel that James Ritchey held the land by a direct trust, so that we need not inquire when, if at all, the statute of limitations commences to run in such cases. We have seen that inasmuch as the evidence does not establish the fact that John B. Ritchey paid for furnished any part of the purchase-money of the land, hence a resulting trust could not arise. For some purposes the vendor of real estate is deemed a trustee for the vendee of the land, and the vendee in like manner is deemed a trustee of the vendor of the purchase-money, and it is upon this principle that the specific execution of contracts to convey real property is based. 2 Story's Eq. Jur., § 789, and cases cited. So that in this sense James Ritchey was a trustee of John B. Ritchey for the land in controversy — the execution of the trust consisting in making a conveyance to him of the land. This relation existed after the death of John B. Ritchey between James Ritchey and the heirs at law of the former.

*3. ADVERSE POSSESSION: denial of trust.*

On the death of John B. Ritchey, his widow, now Margaret A. Peters, became entitled to one-third of the land in fee simple, and her two children — the other plaintiffs — each to one-third also.

Without stopping to discuss the question as to whether the statute began to run immediately on the death of

John B. Ritchey, or when James Ritchey took possession of the premises in dispute, we are clear that the statute did commence to run at least from the conveyance of the land by deed of warranty from James Ritchey to Huston H. Ritchey in April, 1858, and the taking of possession thereunder by the vendee. For though there had been, as plaintiffs claim, a technical resulting trust, the statute began to run when James Ritchey assumed absolute ownership of the property, and thereby denied the trust. 2 Story's Eq. Jur., §§ 174 to 178, 472. And it seems to us that a sale by the trustee by an absolute deed in which he asserts that he is the absolute owner of the land, followed by actual possession of his vendee, is such a denial of the plaintiffs' equitable title, or that he held the legal title in trust, as to amount to a repudiation of the trust. From that time, therefore, at the latest the statute began to run. The ten years expired April, 1868, at which time the action as to Margaret A. Peters was barred. Joel C. Ritchey arrived at the age of majority on the 24th of March, 1867, and as to him the action was barred March, 1868, nearly two years prior to the commencement of the action.

The cause will be remanded to the district court to enter a decree in conformity with this opinion.

<div align="right">Reversed.</div>