ANN E. PARMENTER, Appellant, v. SABERT E. PARMENTER, MRS. SABERT E. PARMENTER, his wife, WALTER E. PARMENTER, and EDITH WITMER, formerly PARMENTER.

Fraudulent conveyances: EVIDENCE.  In this action to set aside a conveyance from plaintiff to her son, the evidence is reviewed and held insufficient to show that the conveyance was procured through the fraud and collusion of defendants.

**Accounting:** RENTS AND PROFITS: PERSONAL SERVICES. Where defend-
ant took possession of his mother's farm under an express agree-
ment that he was to have what he could make from it, and in
return take care of her, pay taxes and insurance and make im-
provements and repairs, all of which he did, she was not entitled
to an accounting for rents and profits during the existence of the
arrangement; nor to compensation for her services while they
thus lived together.

**Trusts:** EVIDENCE: LIMITATIONS. Where the evidence disclosed that a
son was to use and handle personal property of his deceased father
as his own, with no requirement for an accounting to anyone,
finally using and disposing of it all, and his mother made no claim
to any interest therein for more than ten years thereafter, no trust
in favor of the mother was established: and if a trust existed
action therefor was barred.

*Appeal from Polk District Court.*—HON. LAWRENCE DE
GRAFF, Judge.

FRIDAY, NOVEMBER 15, 1912.

The facts are stated in the opinion.—*Affirmed.*

*L. A. Smyres* and *Dale & Harvison,* for appellant.

*Parker & Riley,* and *Bowen & Alberson,* for appellees.

SHERWIN, J.—The plaintiff is the widow of Edward
Parmenter, who died intestate in Polk county in 1897, leav-
ing surviving him seven children. The defendant Sabert
E. Parmenter is the oldest son, and Walter E. Parmenter
the youngest. Edith Witmer is the youngest daughter. Walter
and Edith were living at the parental home when their
father died, and were of the respective ages of twenty-two
and eighteen years. The action was brought against Sabert
E. Parmenter to set aside and cancel a certain deed, dated
and recorded May 25, 1906, whereby the plaintiff conveyed
to him ninety acres of land situated in Polk county, on
the ground that the same was made without consideration,

without independent advice, and because of fraud and collusion practiced upon the plaintiff by her two sons, Sabert and Walter. As incident to the main relief sought, plaintiff seeks an accounting against Sabert for the rents and profits of said land for the years 1901 to 1910, both inclusive. She also asks to recover against Sabert for labor and services rendered him during the same period. The plaintiff seeks to recover against Walter E. Parmenter for the wrongful conversion to his own use of the plaintiff's share of the personal property belonging to his father's estate, and for the rents and profits of the same land for the years 1898, 1899 and 1900. Sabert E. Parmenter denied the grounds upon which his mother asks the cancellation of said deed, and, further answering, he alleges that he has made improvements on said land, relying upon said deed, and his mother is thereby estopped to maintain this action. As to the claim for an accounting for the rents and profits of said land, he says that action for the same for the years 1901 to 1905 is barred by the statute of limitations. As to the period from 1906 to 1910, both inclusive, he pleads that he occupied said premises with his mother, under verbal agreement with her made prior to the beginning of such occupancy, whereby he was to have the rents and profits of the land in return for the payment of taxes, insurance, repairs, and upkeep of the same, and the personal expenses of his mother, and avers compliance therewith on his part. He denies her claim for services. Walter E. Parmenter, for answer to the claim against him, denied generally, and further pleaded that the action was barred by the statute. He further pleads the same arrangement with his mother for the use of the land that is pleaded by his brother Sabert, and alleges compliance therewith. The district court refused to cancel the deed, and found against the plaintiff's claim for services. As to an accounting for rents and profits by Sabert, the court found the same barred for the years 1901 to 1905. An accounting for the years 1906

to 1910 was granted, and it was found that Sabert was indebted to his mother in the sum of $300. The court found adversely to the plaintiff on her claim against Walter E. Parmenter. The plaintiff alone appeals.

A statement of the conditions existing at the time of the death of the husband and father, and of the subsequent financial transactions between the mother and the two sons, Sabert and Walter, and the daughter Edith, prior to the execution of the deed in question, will throw much light on the present controversy. As we have heretofore said, Edward Parmenter, the father, left surviving him his widow, the plaintiff, and seven children. Prior to his death, the five oldest children, including the defendant Sabert, had received advancements of their share of the father's estate. This is conceded by all parties, and at the time of his death Mr. Parmenter owned two hundred and seventy acres of land in Polk county and certain personal property, and the son Sabert was appointed administrator of his estate. Very soon after the death of the father the family had a conference at which it was mutually agreed that the oldest five children had already received more than their proportionate share of their father's property, and that the estate left at the time of his death should be divided equally between plaintiff, Walter and Edith. It was thereupon divided so that each of the three received what was considered to be one-third in value of the entire estate left by the father; conveyances were duly executed, whereby Edith took title to one hundred acres of the land, Walter received eighty acres thereof, and the plaintiff the remaining one-third, being the ninety acres in controversy, upon which the homestead was located. Walter and Edith continued to live with their mother in the old homestead until late in 1900, under conditions which will be more fully disclosed further along. Some two months after this division had been made, the plaintiff made a will, by the terms of which Edith and Walter were to receive the ninety acres in con-

troversy upon the death of plaintiff. In November, 1897, a public sale was had of a part of the personal property belonging to the estate, and from the proceeds of such sale Edith was paid $1,000 in full settlement of her interest therein. The remainder of the money received from the sale of such property was kept and used by Walter as if the entire amount thereof belonged to him, and this was without any objection from the plaintiff. The remainder of the personal property was kept on the farm and was sold, or otherwise disposed of, by Walter, without objection on the part of the plaintiff. Walter remained with his mother, and worked the farm until in November, 1900, when he was married and left. Edith remained with her mother until in December of the same year, when she also married and left the old home. A few months before these marriages, and in anticipation thereof, as the record fairly shows, Sabert arranged to go back to the old homestead and take care of his mother. Sabert had before this time, separated from his wife, and was then living some distance from his mother. He owned one hundred and sixty acres of land, which about August, 1900, he traded to Walter for the eighty acres that Walter had received in the division of the two hundred and seventy acres left by the father, and for Walter's interest under the will of his mother in the ninety acres in controversy. Sabert also purchased from Edith the one hundred acres that had been deeded to her in the family settlement, and also bought from her and paid her $1,000 for her interest, under her mother's will, in the ninety acres in controversy. These transactions were fully understood and acquiesced in by the plaintiff, except that she thought, and so expressed herself, that Sabert was not making an advantageous trade with Walter. Shortly after Sabert had purchased the respective interests, under the plaintiff's will, of Edith and Walter in the land in controversy, and to carry out the new arrangement, the plaintiff agreed to and did make

a new will in which she devised the ninety acres in controversy to Sabert. Near the close of 1900 Sabert went back to the old home and to his mother, where they lived together until the fall of 1910. Plaintiff was not satisfied that the will in favor of Sabert would accomplish her intention to give him the land in controversy, and, after several talks about the matter, she executed the deed of May 25, 1906, which gave Sabert the title in fee to the ninety acres in controversy, subject to a life estate reserved to herself. Both before and after the execution of this deed, Sabert farmed the ninety acres, and took all of the proceeds therefrom, using the same for the support of himself and mother, for taxes and improvements on the land, and for purposes of his own. During the years that Sabert and the plaintiff thus lived together, the plaintiff, though well along in years, was able to do, and did, a great deal of the hard work. The mutual love of these two was great, and each was deeply concerned for the welfare of the other, but in the fall of 1910 differences between them, arising in part, at least, out of Sabert's second marriage, caused the plaintiff to leave him, and she thereupon went to the home of her daughter Edith.

I. Appellant contends that because of the confidential relation existing between the defendant Sabert E. Parmenter, and his mother, the plaintiff, and because of

1. FRAUDULENT CONVEYANCES: evidence. her trust and confidence in him, as shown by the record, the burden of proof is upon him to show the *bona fides* of the transaction. We have held in many cases that where there is such fiduciary relation between parent and child, and the conveyance is gratuitous, the burden rests upon the beneficiary to prove the *bona fides* of the transaction. And without determining whether the record before us shows that such relation existed here, or that such trust and confidence was reposed in the son as to invoke the application of the rule, we may concede that it should be applied to the

transactions under consideration. But, giving the plaintiff the full benefit of such rule, we are still of the opinion that she is not entitled to have the conveyance set aside and canceled. The undisputed history of the transactions between the plaintiff and these defendant sons and daughter from the time of the death of the father until the unfortunate separation of the mother and Sabert in the fall of 1910 in itself almost conclusively refutes the present claim of the plaintiff. The five oldest children had received, at least, all that they were entitled to from their parents before the death of Mr. Parmenter, and after his death, Edith and Walter were the only children about whose financial welfare the mother was concerned. The other children were married and had homes of their own, and it was upon Edith and Walter, one or both, that the mother must depend, if she continued to live in the home that had been hers and her husband's for over forty years. That she did not then or thereafter want to break up her home is conclusively shown. Edith and Walter were both young and as the plaintiff thought would both remain with her for many years. But the plaintiff thought that, in any event, these two were justly entitled to the ninety acres when she was through with it, and hence she made her first will giving it to them. This arrangement continued with the approval of all, until Edith and Walter were planning their marriages and the consequent departure from the parental roof, and it became apparent that other arrangements would have to be made for the care of the mother. Sabert had always been, and was then, plaintiff's favorite son. He and his wife were separated, and there was no obstacle in the way of his going to his mother's home and helping her keep it for the rest of her life. To enable him to do this, he acquired by purchase the tracts of one hundred acres and eighty acres that Edith and Walter had received in the division of the home farm, and also purchased of them the interest which they were supposed

to have in the land in controversy under the will of the plaintiff, and there can be no question but what this arrangement was made with the full knowledge and approval of the plaintiff. After Sabert had bought and paid for this expectancy of Edith and Walter, under the circumstances disclosed, about the only natural and right thing for the plaintiff to do was to make some arrangement that would protect him, and, following out the plan that she had adopted with Edith and Walter, she made a new will, devising the land to Sabert. Up to this point of time there could have been no fraud or collusion practiced upon the plaintiff without a participation therein by the daughter Edith, and this the plaintiff does not claim. The subsequent execution of the deed to Sabert simply made a present conveyance of an interest that the grantor originally intended should be postponed until her death. All of these transactions appear to us to have been very natural and proper, and we are united in the view that there was no fraud, collusion, or conspiracy connected with any of them.

II. Appellant can not justly complain because she was not allowed a greater sum on the accounting between her and Sabert. The decided preponderance of the evidence *2. Accounting: rents and profits: personal services.* shows that Sabert took possession of the farm, and continued such possession under an express agreement with the plaintiff that he was to have what he could make from it in return for taking care of plaintiff, paying the taxes and insurance, and for improvements and repairs, all of which he did. This agreement remained in force during all of the years involved in this controversy, and plaintiff was not in reality entitled to the sum found due her on the accounting, but, as the defendant Sabert does not appeal, we need not further discuss the matter.

III. Appellant does not press her appeal on the proposition that she should have been given recovery for her services while she and Sabert lived together. That she is

clearly not entitled to anything on that account, see the following decisions: *In re Estate of Bishop,* 130 Iowa, 252; *Donovan v. Driscoll,* 116 Iowa, 339.

IV. It is appellant's contention that Walter E. Parmenter wrongfully converted her share of the personal property that was left by her husband, and that he thereby became a trustee, holding it for her benefit.

*3. TRUSTS: evidence: limitations.* It is sufficient answer to this claim to say that the evidence wholly fails to prove a trusteeship. On the other hand, it is shown without serious question that Walter was to use and handle this property as his own, and that he was not to account to the plaintiff for it. Moreover, at the time he left the farm in 1900, the said personal property had all been either used or disposed of by him, and no claim was made therefor until this suit was brought more than ten years thereafter. Had any of this property ever been held in trust for the plaintiff, her action therefor would now be barred, because of Walter's denial of the trust and claim to the property before and at the time he left the farm. *Wilson v. Green,* 49 Iowa, 251; *Murphy v. Murphy,* 80 Iowa, 740; *Peters v. Jones,* 35 Iowa, 512.

V. Walter's possession of the land in controversy from 1897 to 1900, and his use of the income therefrom, was under an agreement with his mother that he was to take care of her and pay other expenses connected with the land, and have what he could make over and above that amount. The judgment of the district court is, in all respects,— *Affirmed.*