IN.RE ESTATE OF RALPH McELRATH.

McELRATH ESTATE, INC., Appellant, v. LIDA McELRATH et al., Executrices, Appellees.

No. 47122.

██ 

DECEMBER 16, 1947.

Ray E. Rieke, of Sioux City, for appellant.

A. G. Hess, of Sioux City, for appellees.

BLISS, J.—W. W. McElrath, a resident of Moville in Woodbury County, Iowa, died testate May 6, 1926. He willed all of his property to his sons, Ralph McElrath and Fred McElrath, as trustees. The record does not disclose the provisions of the trust but apparently all of his children were the beneficiaries. Ralph was nominated as executor by the will and was appointed and qualified. The children, in addition to Ralph and Fred, were Roy W. McElrath, Minnie M. Payne, Edith M. Hogue, Maude M. Kusian, Alice H. McElrath, Will McElrath, Eva M. Southwick, and Helen Logan. The last named made a settlement and assigned her interest in the estate to the other children. She has no interest in this litigation. The deceased and the family apparently operated, or were largely interested in, two banks: the Moville State Bank and the Lawton Savings Bank.

The executor, in his inventory as of the date of decedent's death, divided promissory notes of the estate into three classes:

(1) worth face value with accrued interest, aggregating $155,-790.46 (2) those worth approximately twenty per cent of their face and interest, $33,828.52 (3) those of no value and uncollectible, $27,724.23. In the first class were notes of several of the children approximating $140,000, some with interest long past due. Some real estate, certificates of deposit, and shares of stock were also listed, including ninety-one shares of stock in the Moville State Bank and seventy-eight shares in the Lawton Savings Bank.

On July 31, 1930, Ralph McElrath, the executor, made his final report. He set out the real estate, consisting of forty acres of farm land and several town lots in Moville. He named the nine children, who were beneficiaries under the will, subject to the trust. He listed the promissory notes, most of which were those of the children. He stated that he had delivered all the property of the estate listed in the final report to himself and Fred McElrath, as trustees, in accord with the direction of the will. He asked for his discharge. Attached to the report was a waiver of notice of hearing on the report, an approval thereof, and consent that it might be presented to the court at its convenience. He was discharged and the estate closed.

On or about November 28, 1930, the trustees made their final report stating that they had received from the executor all personal property belonging to the estate and had taken charge of all real estate of which the decedent died seized; that the only persons interested in the estate are the children of decedent, except Helen Logan; that "said trustees have converted said real estate into cash, and that all personal property and money which came into possession of said trustees, and all money realized from sale of real estate has been divided between beneficiaries under last will and testament of W. W. McElrath, deceased, and heirs at law of Alice L. McElrath [surviving spouse of deceased who took an undivided one third under the will and died intestate May 16, 1929], other than Helen Logan * * * and that hereto attached is instrument signed by Eva M. Southwick [et al., naming all of said children] ratifying and confirming acts of said trustees in sale of said real estate, and acknowledging receipt in full of all their share of the personal

estate of W. W. McElrath, deceased, and acknowledging receipt in full of all sums due them out of the proceeds of sale of real estate, and waiving notice of time and place of hearing on this final report and consenting that the same may be approved at any time which may suit the convenience of the court." The trustees prayed for the approval of their report, and for their discharge. The report was signed and sworn to by Ralph and Fred McElrath, as trustees.

Attached to the final report is the waiver, consent, and receipt referred to therein, signed by all of the nine children on November 28, 1930, which instrument also recites, we "hereby waive any objection to such sale [of real estate] and manner in which same was made, by reason of possibility that it might have been necessary to have such property appraised, and sale approved after notice to interested parties, and also waive all objection which we may or might make on account of said Ralph McElrath and Fred McElrath being joint purchasers and grantees of such real estate, and waive any and all objections of every kind and nature which we may or might make to such sale of such real estate by said trustees." The trustees were discharged on the filing of their report, according to the testimony of Fred McElrath, as a witness for the plaintiff. This discharge was in December 1930.

There was received in evidence the "Notice Of Incorporation of McElrath Estate, Incorporated," bearing date of July 3, 1930, and signed "McElrath Estate, Incorporated, By Ralph McElrath, President, By Edith Hogue, Secretary." It recited the name of the corporation; its place of business at Moville, Iowa; the general nature of its business—the acquiring, selling, dealing in real estate, money, commercial paper, etc.; its capital stock of $180,000, to be issued when paid for; the commencement of its business on June 13, 1930, and its continuation for twenty years; the conduct of its business by a board of directors of nine members, to be constituted of and by the nine children until the next annual meeting; and the limit of its indebtedness and exemption of the private property of its stockholders. The minutes of the first meeting of its board on July 1, 1930, directed the publication of the notice, provided for the corporate seal, form of stock certificate, and bylaws,

Ralph McElrath was chosen president and Edith M. Hogue secretary. Its articles of incorporation were signed and acknowledged by all of the children on June 9, 1930, and filed and recorded on June 25, 1930. The certificate of incorporation was issued by the secretary of state on or about June 13, 1930. Few meetings of the board were ever held, and its minutes, records, and books are missing in large part.

The claim filed by the corporation states that the real estate and personal property of the W. W. McElrath estate, listed in Exhibits A and B, attached to the claim, became the property of the corporation and were received by Ralph McElrath, as its president and manager. The answer and resistance to the claim filed by defendants admits ''that the only business transacted by said corporation was that it took title from the beneficiaries under the trust above referred to—to certain real estate, which was * * * conveyed to the receiver of Lawton Savings Bank and Moville State Bank, in full settlement and satisfaction of stock assessment or assessments levied against W. W. McElrath or W. W. McElrath estate * * * and has never carried on any further business of any kind.''

After the death of W. W. McElrath the said banks continued in operation by members of his family. Fred McElrath was the cashier of the Moville State Bank and Roy McElrath was its president until both banks were closed because of insolvency by the state banking department in October 1931. One of the disputed questions of fact is the number of shares of stock which W. W. McElrath or his estate owned at and prior to the closing of the banks. The claim of plaintiff states that the value of the property ''conveyed to said Banking Department was substantially in excess of the assessments owing on ninety-one shares of stock in the Moville State Bank and seventy-eight shares of stock in the Lawton Savings Bank.'' The claim also states that certificate No. 49 of the stock book of the Moville State Bank shows that on July 7, 1931, ''Ralph McElrath conveyed one hundred seventeen shares of stock to W. W. McElrath Estate. That no estate was in existence at said time * * *.'' However, the record herein shows that certificate No. 54, for one hundred seventeen shares, was issued on July 7,

1244

1931, by Roy McElrath, president, and Fred McElrath, cashier, and certifies that the "W. W. McElrath Estate, is the owner of 117 shares of one hundred dollars each· of the capital stock" of said bank.

Fred McElrath testified that the minutes of the bank meeting held on July 2, 1925, of which he, as cashier, was secretary, state that: "198 shares of stock were transferred that day; 117 shares to Ralph McElrath (Stock Certificate No. 49) and 81 shares to Fred McElrath (Stock Certificate No. 50) which was the complete stock owned by W. W. McElrath before his death; that from 1925 to July 7th, 1931, when Ralph transferred 117 shares W. W. McElrath Estate for [or] the corporation owned no stock in the bank; that Ralph McElrath as executor of the estate of W. W. McElrath did list 91 shares of stock in Exhibit B which is the inventory signed by Ralph McElrath and also in Exhibit A the commission for appraisal signed by Ralph McElrath." On cross-examination Fred testified "that 198 shares of bank stock were transferred to him and to Ralph McElrath, 81 shares to himself, 117 shares to Ralph; that the witness gave his note for the 81 shares. The note was taken up when he transferred the shares to Ralph and Ralph gave his note for $19,800.00 to the father W. W. McElrath." On redirect examination Fred testified that the note he gave for the eighty-one shares of stock had been canceled prior to the time of his father's death. Among the notes received by the trustees from the executor were notes of $58,-108.58 owing by Ralph, $12,500 owing by Fred, $16,510 owing by Roy, $23,000 by M. E. Southwick, $5,575 by R. I. Payne, $11,621.13 by Maude Kusian, $4,500 by E. M. Hogue, $11,538.32 (worthless) by William McElrath, all with accrued interest. Possibly Ralph never paid his father the $19,800 note for the one hundred ninety-eight shares of stock, which accounted for the issuance of certificate No. 54 for one hundred seventeen shares to the W. W. McElrath Estate on July 7, 1931.

On September 14, 1932, in Andrew, Superintendent of Banking, v. Moville State Bank, the receivership action pending in the District Court of Woodbury County, Iowa, the plaintiff, as receiver, made application for an order to amend the inventory of stock and stockholders filed therein, alleging that

"through error and neglect of the officers of said bank certain bona fide sales and transfers of stock were not entered in the books of said bank, and that said transfers were all made more than one year prior to the closing of said bank." He asked that the inventory be amended to show the true and correct list of stockholders and the shares of stock held by each to be: "W. W. McElrath Estate 208, Ralph McElrath 60, Fred McElrath 20, Roy McElrath 15, Eva Southwick 25, S. E. Sibley 10, R. J. Anderson 5, S. F. France 5, Julius Pfeiffer 1, George Wilson 1." The district court granted the order, Judge R. A. Oliver, presiding.

On April 24, 1933, in the receivership action of Andrew v. Lawton Savings Bank, pending in Woodbury county, the receiver made application alleging that the McElrath Estate was the owner of seventy-six shares of the capital stock of the Lawton Savings Bank at the time of the receivership, and said estate became liable for stock assessment for $7,600; that said estate is now a corporation holding the assets of W. W. McElrath, deceased, for the benefit of the heirs of said W. W. McElrath, and that "insofar as your Receiver can learn said estate, through its proper corporate officers, has executed to your Receiver deeds to all its real estate [here follows a list of a considerable number of lots in Moville, four in Lawton, and forty acres of land which were appraised in the inventory of the executor at $8,250]. Also the following promissory notes [have been delivered to the receiver] executed by the named makers, and in favor of said estate or said corporation [here follows a list of seven notes in the total amount of $19,104.68 having an estimated value, according to the record before us, of $6,531]"; that said corporation has also assigned to the receiver notes in the Moville State Bank entered as McElrath Estate farm account for $1,750 constituting an indebtedness of the farms to the estate; that the corporation has also assigned a deposit account in the Lawton Savings Bank in the sum of $5,219.69 (the value of this deposit depends upon the percentage of the bank's solvency, which the record does not show); that all of the said conveyances and transfers have been made by the estate as a proposed settlement of the liability of the estate on its stock assessment on seventy-six shares held in the Lawton

Savings Bank and two hundred eight shares held in the Moville State Bank; "That your Receiver is informed and believes that the foregoing property * * * constitutes all the property owned by said corporation * * * your Receiver believes * * * the * * * proposition [should] be accepted"; that in addition to the proposition of compromise and settlement W. W. McElrath and Ralph McElrath signed certain guaranties on April 3, 1924, amounting to the sum of $40,767.75, guaranteeing certain bills receivable as required by the banking department, and that because of the property delivered to the receiver, and the fact that Ralph McElrath, the other signer on the guaranty was released from all liability thereon by a court order in the receivership on August 5, 1932, at which time a settlement was made on his stock assessment, the liability of the McElrath Estate, Inc. under these guaranties be fully eliminated; "That there is pending in this Court a suit against stockholders of said bank on their liability for assessment, and in the event that a compromise is authorized herein, said suit should be dismissed in reference to the McElrath Estate, Inc., Ralph McElrath, Fred McElrath and Roy McElrath, as said suit involves the same liabilities as those referred to herein."

On April 24, 1933, in the receivership suit against the Moville State Bank, the receiver made application for an order settling the liability of various stockholders, alleging that the liability for an assessment of one hundred per cent on the par value of the stock had been settled by full cash payments made by S. E. Sibley, R. J. Anderson, S. R. France, and Julius Pfeiffer, "and in the case of Ralph McElrath by the execution to your Receiver of a first mortgage on real estate for the full value of his assessment under authority of an order of this Court; that the remaining stockholders are W. W. McElrath, now deceased, 208 shares, Fred McElrath, 20 shares, Eva Southwick, 20 shares, Roy McElrath, 15 shares * * * who have each offered settlements of their respective stockholder's liability, which settlements have been recommended for approval by the appraisers * * *."

On May 6, 1933, the applications noted above were heard by Judge Wakefield and the orders were granted as prayed.

On March 30, 1933, two deeds—one a quitclaim and the other a warranty—were executed to L. A. Andrew, as receiver of the two said insolvent banks, conveying to the grantee all of the real estate hereinbefore referred to, by McElrath Estate, Inc., by Ralph McElrath, president, and by Edith Hogue, secretary. In the acknowledgment of execution of each deed is the statement "that said instrument was signed and sealed in behalf of said corporation, by authority of its Board of Directors." Each deed was filed for record on April 11, 1933.

The claim of plaintiff was first filed on July 3, 1944, and an amended and substituted claim was filed on October 19, 1944, and on January 21, 1946, the substituted claim, on which trial was had, was filed. The latter claim states that it was "in substitution of the amended and substituted claim of W. W. McElrath, Inc." It purports to be, and in fact is, the claim only of Fred McElrath, although it is signed "Fred McElrath, Pres." The affidavit is:

"I, Fred McElrath, being first duly sworn, on my oath depose and say: That I am the claimant above named; that I have read the above claim and know the contents thereof and the statements therein contained are true as I verily believe."

The substance of the claim is that the compromise settlement was not authorized by the beneficial owners of the property, and that the issuance of the certificate for one hundred seventeen shares on July 7, 1931, to the W. W. McElrath Estate after it was closed did not make it liable for the stock assessment on said shares.

But whether the claim be treated as his or that of the corporation is quite immaterial, as in either case the judgment must be affirmed.

The court made twelve findings of fact: (1) That Ralph McElrath was discharged as trustee on or about December 1, 1930, and thereafter was never accountable as such trustee of personal property belonging to the estate (2, 3) that he was never trustee of any personal property belonging to the corporation (4) that the real estate owned by W. W. McElrath at his death was conveyed to the corporation prior to March 30, 1930, by the beneficiaries under the will (5) that the real estate was

conveyed by the corporation to the superintendent of banking (6, 7) that the stock assessment liability was as alleged in the answer, and was a proper basis for settlement (8) that the deeds to Andrew were duly recorded on April 12, 1933 (9) that Ralph McElrath resided continuously at Moville from prior to 1932 until his death on December 28, 1943 (10) that Fred Mc-Elrath, representing himself as president of the corporation, admits that he knew of the conveyances to Andrew shortly after they were made (11) that Fred McElrath and all other parties interested in said corporation resided in Moville or vicinity during all of the time from March 30, 1933, to December 28, 1943, the date of the death of Ralph McElrath (12) that the grantee in said deeds to the superintendent of banking took possession of the land conveyed on or about March 30, 1933, and was in possession thereafter to December 28, 1943.

As conclusions of law the court found that Ralph McElrath was not the trustee of any personal property which ever belonged to the corporation, and never became accountable to the corporation for any misuse of the same, or use of the same without the authority of the parties interested in the corporation; that the recording of the deeds was constructive notice to all persons claiming any interest in the real estate; that no fraud was alleged or proven; that conveyance of the real estate to Andrew was proper without authority of the parties interested in the corporation, without timely objection, or any claim ever made against Ralph McElrath; that the claim was barred by the statute of limitations and by laches.

I. Fred McElrath was the only witness for claimant. None of his brothers or sisters, so far as the record shows, has taken any part in pressing the claim. He introduced minutes of a special meeting of the stockholders of McElrath Estate, Inc., in September 1944, to fill the vacancies left by the death of two officers. He was elected president. The annual meeting was held July 7, 1945, at which the election of the officers at the special meeting was approved. The original claim was filed on July 3, 1944, prior to the special meeting. No action by the board or stockholders authorizing the filing of the claim appears in the record. He was active in his father's business. He approved the executor's final report. He was a trustee

under his father's will and active in the performance of his duties, including the closing of the trust. He was an officer of the Moville State Bank from a time prior to his father's death until the bank closed. He and his brother Roy issued the certificate for one hundred seventeen shares of stock to his father's estate. It may be assumed that he thought the stock belonged to his father. His chief complaint is that this was a scheme of Ralph's to shunt the assessment liability therefor from himself to the estate. He concedes in the statement of his claim that his father's estate was the owner of ninety-one shares of stock in the Moville bank and of seventy-eight in the Lawton bank. The minute book of the Moville bank, of July 2, 1931, shows the ownership of ninety-one shares in the estate. The receivership proceedings indicated the ownership of two hundred eight shares in the father's estate. The record sustains the court's finding that the assessment liability was a proper basis for the transfer of the property to the banking department.

The court found that none of the personal property ever was a part of the corporate assets. We seriously question whether the record sustains this finding. It is true that the children approved the final report of the trustees, which stated that they had received all of the personal property and the proceeds of the sale of the realty, but we conclude that they merely meant that they received it through the medium of the incorporation of the estate. The corporation transferred promissory notes and a certificate of deposit to the banking department. It must have possessed them and had the right to convey them. The corporation was organized to take over both the real and personal property for the benefit of the children. They were the beneficiaries of the corporate trust and active in its administration. Their interest was subject to diminution by the enforcement of the assessment liability, which ultimately left no trust property to be administered. However, this finding of the court in no way affects the rightness of the court's judgment.

■■ The conclusion of the court that the claim is barred both by the statutes of limitation and by laches is sound. The court in the bank receivership proceedings approved the com-

promise and settlement of the stock assessment liability by the transfer of the real estate and the personal property on May 6, 1933. The deeds had been executed on March 30, 1933, and recorded on April 12, 1933. Over ten years passed before any proceeding on the claim was begun. Plaintiff does not contend that the statutory period of limitation had not passed, but insists that the statute had not run against the claim because of the trust relation which had existed between Ralph McElrath as trustee and the corporation and its stockholders as beneficiaries. Plaintiff argues that Ralph McElrath perpetrated a fraud upon the W. W. McElrath estate and the McElrath Estate, Inc., when, to avoid an anticipated assessment liability thereon to himself, he transferred the one hundred seventeen shares of stock in the Moville State Bank to his father's estate, which eventually resulted in a fraud upon the stockholders or beneficiaries of the corporation. Plaintiff relies upon the principle of law stated in Spring v. Spring, 210 Iowa 1124, 1128, 229 N. W. 147, 149, to wit:

"A trustee is presumed to hold his title, as such, in the interest of his beneficiary, and not in hostility thereto. Mere lapse of time, therefore, without more, does not start the statute of limitations."

The rule is well settled but it does not aid plaintiff under the record herein. It has not brought itself within the scope of the rule. It relies upon fraud but it did not plead it, and, in our judgment, fraud on the part of Ralph was not established. The certificate was issued by Roy McElrath and Fred McElrath, as president and cashier, respectively, of the bank. There is no evidence that Ralph ever requested or directed that it be done. If it was fraud, Roy and Fred, two of the beneficiaries of the alleged trust, participated in it, and had knowledge of what was done. The rule or principle of law quoted above states that "mere lapse of time, *without more*, does not start the statute of limitations." (Italics supplied.) There was something more. It is a well-settled rule that when a trustee violates his trust, or denies it, or repudiates it, to the knowledge of the beneficiary, a cause of action against the trustee

immediately accrues to the beneficiary, thereby causing the statute of limitations to at once begin to run against the cause of action. If the transfer of stock was a fraud upon decedent's estate and the corporation and the beneficiaries of both, and a breach of the trust, two of those beneficiaries, Fred and Roy McElrath, had full knowledge of it when it was done, on July 7, 1931. If the conveyance of the land to the State Banking Department was without authority, and a fraud upon the corporation and its stockholders and a breach of the trust, the evidence in the case warrants a finding that each of the children had actual knowledge of these matters. They constituted the board of directors of the corporation. The acknowledgment of the execution of each deed states that it was executed in behalf of the corporation and by the authority of its board. Not one of the children denied it but Fred, and he testified that he knew of the execution of the deeds shortly after it was done, and talked with Ralph several times about the transfer of the property. Edith M. Hogue, one of the children, executed the deed as secretary of the corporation. The record of the deeds was constructive notice to anyone adversely interested. Fred McElrath testified that notices of suit against the estate of decedent and the corporation were served upon the children. Similar suits were brought against several of the children— Fred, Roy, Will, Mrs. Kusian, Mrs. Southwick. They were all compromised and settled after negotiations. The settlement of the suits against the estate and those against the children were all somewhat tied together. To say that the children had no knowledge of the transfer of the real estate and the personal property in the settlement of the stock assessment liability of the estate, would be disregarding the evidence and all reasonable inferences therefrom. The settlement required the transfer of all the remaining assets of the estate of the deceased. The corporation had no other property. Whatever trust existed became a dry trust, with no benefits thereafter accruing or passing to the beneficiaries. The corporation had no further reason for its existence, and the evidence establishes that it did no further business for over ten years, until the special meeting in September 1944. Such cause of action as the corporation or its stockholders and beneficiaries had against Ralph McElrath

accrued more than ten years before the institution of the proceeding on this claim, notwithstanding a trust may have once existed, because of full knowledge of each beneficiary of just what Ralph McElrath had done as trustee. They knew that trust had been totally destroyed over ten years before.

Numerous decisions sustain our conclusion. See Carr v. Craig, 138 Iowa 526, 532, 533, 116 N. W. 720; Zunkel v. Colson, 109 Iowa 695, 698, 81 N. W. 175; Smith v. Smith, 132 Iowa 700, 704, 705, 109 N. W. 194, 119 Am. St. Rep. 581; Peters v. Jones, 35 Iowa 512, 520, 521; Wilson v. Green, Weare & Benton, 49 Iowa 251, 253, 254; Blackett v. Ziegler, 147 Iowa 167, 171–174, 125 N. W. 874; In re Estate of Mahin, 161 Iowa 459, 471, 143 N. W. 420; Parmenter v. Parmenter, 157 Iowa 195, 203, 138 N. W. 438; Howes v. Sutton, 221 Iowa 1326, 1330, 268 N. W. 164.

II. Courts have uniformly looked with disfavor upon stale claims. The trial court held plaintiff was barred by laches in its prosecution of the claim. All of the children of the decedent lived in Moville or its vicinity during the occurrences complained of and for more than ten years thereafter. No complaint, so far as the record shows, was ever made by any of the children against Ralph. But after his death, and when Ralph could no longer answer the charges or defend his estate, when evidence was no longer procurable or less available, after the lapse of more than ten years, his brother Fred, who was at all times fully informed respecting all matters complained of, started this proceeding. The prosecution of this unduly stale claim is unfair and prejudicial to Ralph's estate. Plaintiff bases his right to now prosecute upon the trust relation —an equitable ground—and the court was justified in holding that it would be inequitable to grant the relief. The judgment of the able and experienced trial court, just recently passed away, is sustained by the evidence and record. It should be, and it is—Affirmed.

OLIVER, C. J., and HALE, GARFIELD, SMITH, MANTZ, MULRONEY, and HAYS, JJ., concur.