MURPHY *et al.* v. MURPHY.

1. **Estates of Decedents:** NO ADMINISTRATION: LIMITATION : TITLE TO PERSONALTY. Where the five years prescribed by section 2367 of the Code for granting administration had expired, and the evidence justified the conclusion that the debts of the decedent had been fully paid, the widow and heirs were the owners of the personal property. ( See opinion for citations.)

2. **Trusts :** ENFORCEMENT : LIMITATION OF ACTIONS. Where one of the heirs of an estate was part owner with the decedent of the personal property, and after the death of decedent he took possession of all of it, he became trustee for the widow and the other heirs, to the extent of their interests, and the statute of limitations did not begin to run in his favor against an action by them for an accounting, until he repudiated the trust by unequivocal acts or words. ( See *Wilson v. Green*, 49 Iowa, 251.)

3. ———— : CONSTRUCTIVE : EVIDENCE : ESTATES OF DECEDENTS. A father owned a farm, and one of his sons purchased land adjoining, and all the land was titled and managed as one farm, the labor being done by the father and mother and all the members of the family, who all lived together on the land of the father. The proceeds of the farm were used for the common support, for payment

for the son's land, and for the accumulation of personal property. Upon the death of the father the son took charge of the farm and of the personal property, making no claim of sole ownership until after some years, when the widow and heirs demanded a settlement. *Held*, in view of all the circumstances (see opinion), that he had, aside from his interest as an heir, only an undivided interest in the property, and that as to the remaining interest he held it in trust for the widow and the heirs.

*Appeal from Mitchell District Court.*—Hon. J. B. Cleland, Judge.

FILED, JUNE 5, 1890.

ACTION in equity to enforce a trust and to compel an accounting. There was a trial by the court, and a decree was rendered in favor of plaintiffs. The defendant appeals.

*M. M. Browne* and *J. M. Moody*, for appellant.

*W. L. Eaton*, for appellees.

ROBINSON, J.—The parties to this action are the widow and heirs of John Murphy, who died intestate on the thirteenth day of April, 1879. Plaintiffs are the widow, daughters and grandchildren of decedent, and defendant is his son. When John Murphy died, he was the owner of eighty acres of land, and, as the plaintiffs claim, of stock, grain, machinery and other personal property, of the value of twenty-nine hundred and seventy-nine dollars. Defendant, at that time, held the title to two hundred acres of land, which, for many years, had been farmed in connection with the land of decedent. Upon the death of his father he took possession of the personal property in question, and used and disposed of it, and of the increase of the stock, at his pleasure. He claims that all this property belonged to him, and refused to account for it. Plaintiffs claim that it belonged to decedent, and was taken by defendant, to be held and used for the benefit of the heirs of

decedent, and they demand an accounting, and that defendant be required to pay to them the amounts to which they shall be found to be entitled as determined by the court.

I. Administration of the estate of decedent was never granted. It is contended by appellant that it is not shown that it was impracticable to obtain administration when this action was commenced, and that there may be outstanding debts of decedent; hence, that plaintiffs have not shown themselves to be entitled to maintain this action. This action was commenced on the seventeenth of June, 1885 ; therefore, the time within which administration could have been granted had then expired. Code, sec. 2367. The evidence justifies the conclusion that the debts of decedent had then been fully paid. The plaintiffs, therefore, were the owners in fact of all the personal property of decedent which was not owned by defendant, and are entitled to the relief demanded in this action. See *Phinny v. Warren*, 52 Iowa, 332 ; *Haynes v. Harris*, 33 Iowa, 520.

1. ESTATES of decedents: no administration: limitation : title to personalty.

II. It is insisted that this action is barred by the statute of limitations. As a general rule, the possession of property subject to the trust by the trustee is the possession of the *cestui que trust*. *Wilson v. Green*, 49 Iowa, 251 ; 2 Perry on Trusts, sec. 863. Therefore, the trustee must repudiate his trust, "by clear and unequivocal acts or words," and thenceforth claim in his own right, free from any trust, and notice of such repudiation and claim must be so given as to make the *cestui que trust* chargeable therewith, before the statute will commence to run. 2 Perry on Trusts, sec. 864. If the property in controversy belonged to the estate of decedent, and defendant took possession of and used and disposed of it, under such circumstances as to create a trust in him, the statute of limitations would not commence to run in his favor until he had in some unmistakable manner given plaintiffs notice, or sufficient reason to know, that he

2. TRUSTS: enforcement: limitation of actions.

Murphy v. Murphy.

claimed the property adversely to them. The evidence shows that he did not make such claim, nor give such notice until within a year or two of the commencement of this action. He first gave plaintiffs to understand the nature of the claim he now makes when a settlement was demanded of him. We conclude that plaintiffs' right of action was not barred when suit was commenced.

III. The evidence is voluminous and conflicting, and it is difficult to reach a conclusion which is in all respects satisfactory. Yet, we think the material facts of the case are substantially as follows: John Murphy moved to Iowa when defendant was about sixteen years of age, bringing with him several hundred dollars in money and some stock and other property. Three years later, or about the year 1864, he moved onto a farm of eighty acres which he purchased, and upon which he thereafter made his home. At that time his family included his wife, two unmarried daughters, defendant, and a son named George who died in the year 1876 at the age of twenty years. When defendant became twenty-one years of age he had little, if any, property, but before the close of the year 1867 he had acquired the title to two eighty-acre tracts of land adjoining that of his father, and in 1874 he procured title to forty acres more. The defendant continued to reside with his parents, and the improvements were made on the tract owned by the father. The several tracts of land acquired by defendant were, from the time they were procured, treated for all practical purposes as a part of the farm upon which the family lived, and both the father and George worked on and helped to improve and farm all the tracts as did the defendant. At times a large amount of stock was kept on the farm, including horses, cattle, sheep and hogs. At one time more than forty cows were milked, the mother and daughters doing a large share of the dairy work. The father was vigorous and performed more labor on the farm while he lived than did the defendant. George

3. —— : con- structive : evidence : estates of decedents.

was not so robust as his brother, but did a large amount of work. Defendant worked well while on the farm, but was away from it, excepting during the seasons of harvesting and making hay, for several years before his father died attending to his own business. While he was on the farm, he transacted most of the business of buying and selling, hiring hands and paying out money. No separate accounts of the expenses of running the farms, nor of the products and proceeds of sales were kept. Defendant was charged nothing for his board, nor for that of the men employed at times on the farm. All worked together apparently for the common interest, although John Murphy, and members of his family to whose services he was entitled, performed much more labor than did the defendant. The proceeds of the common labor were used for the support of the family, to purchase the several tracts of land to which defendant acquired title, and to improve the farm, although most of the grain sold grew upon the land of defendant. Defendant worked for a harvester company two or three years, and was in the hotel business in Osage nearly two years before his father died, and during that time the father managed the farm. When he died defendant left the hotel, and took charge of the farm and all the personal property which his father left on it. For several years he made no special claim to the personal property, and the mother, sisters and others, who were well acquainted with the property and with the manner in which it was acquired and used, had no knowledge that defendant claimed any of it, excepting one or two horses and some other property of small value. Defendant was married in January, 1885. When it became known that he intended to marry, some time in the preceding year, the mother demanded a settlement but without success, and defendant then, and at other times, afterwards and before the commencement of the suit, claimed that all the property in controversy belonged to him. He now insists that he owned all of it excepting a few articles of small value,

when his father died. We do not think the claim is well founded. That his interest in it was greater than plaintiffs admit, is no doubt true, but nearly all of it was treated and considered by all parties in interest as owned by decedent and as belonging to his estate until the latter part of the year 1884, or if defendant believed it to be his own he did not disclose that fact to plaintiffs before that time. He now claims that all the stock which belonged to his father was sold or died before or since the death of his father; that the machinery and implements he left have become worthless, or nearly so, and that the grain was raised on his land, and belonged to him. In other words, it appears to us that defendant is disposed to claim most of the profits which accrued from carrying on the farm, and to throw the burden of the losses upon his father's estate. In our opinion the evidence shows that the larger portion of the property in controversy was owned by decedent when he died and should be accounted for by defendant.

IV. It is contended by appellant that, even if it be found that the property in controversy belonged to the estate of decedent, yet it is not shown that he took or held it as a trustee. An express agreement to that effect was not necessary. The property belonged to the parties to this action, subject to the rights of creditors, and defendant was entitled to but an undivided part of it. His mother and an unmarried sister lived on the farm when he took possession, and he made his home with them,—the mother, until he was married, and the sister, until her marriage in July, 1884. Two married daughters, Mrs. Benedict and Mrs. Cargill, seemed content to let defendant manage the property so long as his mother and unmarried sister had a home on the farm and had sufficient to supply their wants. The other parties in interest were minor heirs of two deceased daughters of decedent. It was natural and proper under the circumstances, so long as there was no administrator, for defendant to take charge of the property, and, since the law will not

THE SAME.

presume that he intended a wrong, we must presume that he took possession of and managed it for the benefit of those to whom it belonged, and a court of equity will compel him to account for it. The fact that he now denies the trust is not material. It was created by his acts, and he will not be permitted to repudiate it.

V. The plaintiff Elizabeth Murphy is the widow of decedent, and as such claims, as exempt to her, property in controversy of the value of six hundred dollars, and one-third of the remainder. The personal property left by decedent has been, in large part, sold or otherwise disposed of, so that but little of value now remains, and it is not necessary for us to describe it particularly. The district court rendered judgment against defendant, and in favor of the several plaintiffs, as follows: In favor of Elizabeth Murphy, for $517.98; in favor of Martha Benedict and Libby Cargill, for $118.91, each; in favor of Kate Birney, for $78.31; in favor of Addie Woods, Charles Deimer, Bertie Deimer, Frank Deimer and Harry Deimer, for $23.76 each; in favor of Fred. Pepper and Clifford Pepper for $59.43 each. Judgment was rendered on the first day of February, 1888, and was to bear interest at six per cent. per annum, from that date. It appears that there were some matters of account between defendant and his mother and Mrs. Birney, and that defendant had paid sundry bills against the estate of his father. It would serve no good purpose to consider and notice separately the large number of items which make up the different accounts involved in this case. It is sufficient for us to say that we have examined the respective claims of the parties with care, and conclude that the judgment was fully as favorable to defendant, in all respects, as it should have been. We find no ground for disturbing it, and it is, therefore, AFFIRMED.