R. N. HOWES, SR., Appellee, v. L. F. SUTTON, Appellant.

No. 43478.

JUNE 19, 1936.

E. C. Halbach and M. L. Sutton, for appellant.

Miller & Claussen, for appellee.

PARSONS, J.—R. N. Howes, Sr., appellee in this case, brought suit for an accounting from L. F. Sutton, an attorney at Clinton, Iowa, and appellant herein, on dealings with said Sutton since 1916. The facts show that Mary Lou Howes transferred all her right, title and interest in 320 acres of land, more or less. situated in Alberta, Canada, to the defendant Sutton, who made a written agreement to pay to Mary Lou Howes one-half of all he received as profit on the said 320 acres, and to cancel a second mortgage he held. On May 3, 1919, Mary Lou Howes assigned this contract to Frank B. Howes, and on September 7, 1933, Frank B. Howes, assigned the contract to the appellee herein, R. N. Howes, Sr.

This action was commenced sometime in 1934, about eighteen years after the execution of the instrument to Mary Lou Howes by Sutton. The petition as finally amended alleged the transfer of title in the Canada land to the defendant Sutton, and alleged that Sutton received about $8,000 and interest thereon at five per cent until final payment was made in 1929 or 1930; that the defendant concealed the facts concerning said transaction and sale, intending to defraud plaintiff. The prayer of the petition of plaintiff asked that the defendant be required to account for the proceeds received from the sale of the land involved; that he be given judgment for any amount found to be due plaintiff, and for general relief.

After several motions were passed upon, defendant filed an answer containing a general denial; but admitted the execution of the instrument dated August 15, 1916, the conveyance of the land by Mary Lou Howes to the defendant, and the sale of the real estate under contract on or about the 20th of April, 1917. He alleged he loaned the plaintiff $567 to enable him to stay foreclosure proceedings against said real estate in the Province of Alberta, Canada, and that the payment of this was secured by second mortgage on the homestead of plaintiff and his wife in Clinton, Iowa, and that by reason thereof the defendant was induced to go to Canada to carry out the plan. The defendant also alleged that at the time of the execution of the agreement herein referred to, the plaintiff represented that said Canada land was subject only to an encumbrance of $2,500 and interest since December 1, 1916; that the same had three miles of fencing, that 220 acres thereof were broken and under cultivation; and that relying on such representations said defendant executed the instrument, and on the 16th day of August, 1916, set out for Calgary, Canada. That such representations were false and were made for the purpose of inducing the defendant to make the agreement of August 15, 1916, and that in fact the property was subject to a claim in excess of $2,500, and there was interest due from the first of December, 1916, on the mortgage, school taxes in the sum of $115.10, wild land taxes $23.60, and that the land was uncultivated, had been allowed to go back, and that by reason of such representations the execution of the instrument sued on was procured through the practice of fraud and deceit. The defendant also alleged that on his return from Canada, on or about September 1, 1916, he reported conditions to the plaintiff, that the best offer he had received on said property was the sum of $2,200 on contract, payable each year out of the proceeds derived from one-half of the crop, and that he was unable to rent the land unless he allowed the renter the sum of $3.50 per acre for breaking it. He alleged that thereupon Mary Lou Howes accepted the surrender of the second mortgage $637, held by defendant against the Clinton, Iowa, property of plaintiff, and that defendant assumed the payment of taxes and mortgage on the land in full payment for such conveyance. Defendant pleaded that at no time since his return from Canada had Mary Lou Howes, Frank B. Howes or R. N. Howes, Sr., made any demand on said defendant for the execution of the contract agree-

ing to pay Mary Lou Howes one-half of any profit he might make on the sale of said Canada land, although said plaintiff R. N. Howes, Sr., was advised at the time of the sale of said real estate in April 1917; that by reason thereof any claim the plaintiff may have acquired through the alleged assignments is now barred by the statute of limitations, and said plaintiff is estopped by reason of laches on account of his or his assign's failure to make such demand for the execution of a contract agreeing to pay one-half of the profits. Such were the issues upon which the case was tried.

The testimony in the case is not very satisfactory, but it is sufficient to show that Sutton went to Canada very shortly after August 15, 1916; that Sutton advanced $567 to the plaintiff for the purpose of preventing foreclosure under the land mortgage, and that Howes, Sr., had not asked for an accounting before his wife died in 1919, although he found out about the sale to Simpson before that. Howes also testified that Sutton gave him $250 in 1919 and he took his wife to Rochester. He could not say how long it was before he next said anything to Sutton. Plaintiff also testified that he talked with the defendant in the 20's, spoke to him a good many times during that time, and that the first time defendant absolutely refused to do anything was in 1933.

Simpson, who purchased the land of defendant, lived in Ontario, Canada; he testified he was acquainted with Mr. Sutton, and met him at the time he signed the contract for the Howes land, which was on the 20th of April, 1917. On November 7, 1927, Sutton wrote a letter to Simpson, the purchaser of the Canada land, saying:

"* * * The original contract was for $8000, but was not to draw interest until the first day of January, 1918, so I began my computation of interest on $7000 as of the first day of January, 1918, dating back your credit of $1000 to that date. I have figured simple interest only and find that there is a balance due on contract of $5331.91 on the first day of November, 1927. In order to help you out, I am willing to accept $5000 at this time and give you deed."

The testimony shows that Sutton had a contract for the land, selling it at $8,000 on the crop payment plan. That as late as November 7, 1927, he was still claiming as due on the contract $5,331.91, but agreed to accept $5,000; and again on

November 15th, on account of misplaced credit, he agreed to take $4,600 as balance due on the contract. The testimony further shows that Simpson paid $8,000, less $160 thrown off for cash, and in addition thereto he paid interest after the first two years at five per cent. The written statement signed by Sutton August 15, 1916, was as follows:

"Mary Lou Howes has transferred to me the following property, W. 2′ 33-3-16, Alberta, Canada, & I hold a second mortgage against her home in Clinton, Iowa, for $567.00. I am going to Canada & if transfer is filed & I get title subject to mtg. of $2500 & int. since Dec. 1916 only I am to return mortgage & note $567 cancelled & give her an agreement that I will pay her, when sold, ½ of all I receive as profit on said 320 acres.
L. F. Sutton."

Under this contract Sutton was really holding the land as trustee. He was to return not only the $567 mortgage, but was to give Mary Lou Howes, when the land was sold, one-half of what he received as profit on the 320 acres of land. This made him a trustee, at least so far as the interest of Mrs. Howes or her assignees were concerned. We find no evidence that he ever repudiated this contract at any time prior to 1933.

It is an elemental principle of law that as between trustee and *cestui que trust*, in the case of an express trust, the statute of limitations has no application, and no length of time is a bar. Against an express and continuing trust, time does not run until repudiation or adverse possession by the trustee and knowledge thereof on the part of the *cestui*. This general principle is laid down in Long v. Valleau, 87 Iowa 675, 55 N. W. 31, 34, 56 N. W. 748. The court said in its opinion, page 684 of the report.

"The property in controversy, if not owned by the defendant, was held by her in trust. She was then, in law, a trustee holding property for the benefit of the real owner, Frank Teabout, and after his death she would hold it in trust for his estate. Now, the general rule is that the possession of property by the trustee, which is subject to the trust, is, in law, the possession of the *cestui qui trust*." This rule is supported by 2 Perry on Trusts, p. 1468, Sec. 863; Murphy v. Murphy, 80 Iowa 740, 45 N. W. 914; Blackett v. Ziegler, 147 Iowa 167, 125 N. W. 874; Carter v. Cohen Bros. Iron & Metal Co., 181 Iowa 588, 164 N. W. 1040; Carr v. Craig, 138 Iowa 526, 116 N. W. 720.

This property, one-half the proceeds of which belonged to plaintiff, was in possession of the defendant, or uncollected. Correspondence shows that it was uncollected, at least as late as 1927. The action is upon a written instrument creating a liability. The action in this case was commenced in time under this rule, so the claim for these proceeds is not barred by the statute of limitations.

The defendant claims that he was fraudulently induced to enter into this arrangement with Mrs. Howes. He claims the land was misrepresented to him, that there was more against it than he was led to believe. But the defendant went up to Canada; he looked over the land, investigated everything against it, and he continued to hold the land. He claims, however, that when he came back he repudiated the contract, and returned the mortgage (which had not been put on record) to Mrs. Howes. He did that. It is claimed, however, by the plaintiff, that they did not understand this to be a repudiation of the contract. Considerable stress is put upon the return of the mortgage. It will be noted in the letter of Sutton acknowledging having made such an agreement with Mrs. Howes, he says: ''I am going to Canada, and if transfer is filed and I get title subject to the mortgage $2500 and interest since December 1916 only I am to return mortgage and note $567 cancelled and give her an agreement I will pay her, when sold, one-half of all I receive as profit on the said 320 acres.'' Everything was done here, except Sutton did not give her the agreement he spoke about. The parties are in direct conflict as to this, but we think that after the defendant had been to Canada and looked over the land, investigated everything against it, there was only a little more than the $2500 against it, he took the land and got busy, soon made a sale at $8,000, and let the payments run along until ten years after there was still due approximately $5,000 on the land. This was not such a repudiation as to bring home to these people notice of the claim he was not going to be bound by the terms of the contract he had given. The record shows that the Howes had this in mind, that they were still to get out of the land their part of the money that was collected, which was to be one-half of the profits, and there was never any direct repudiation of the contract, any statement that he would not be further bound by it, until some time in 1933, when defendant testifies Mr. Howes came and asked him if he couldn't let him have something on

the account of the Canada land. Sutton said, "What do you mean? I don't owe you anything on any Canada land", and further said, "Good Heavens on earth, aren't you satisfied with what I have already done for you, paid for the operation of your wife, paid you $175 for the Western Grocer Company which you agreed to pay me back and never paid me any of it. Isn't that enough to make for a donation to you?" Howes flew out of the office, and Sutton himself was pretty much excited. So this consultation in 1933 is the first repudiation of the trust. Hence defense of laches and defense of statute of limitations fall by the wayside.

The district court heard this evidence, and at the conclusion thereof entered a decree for the plaintiff. The decree simply ordered an accounting, found that the plaintiff is entitled to it from the defendant, with receipts and disbursements. We think the decree is amply supported by the evidence. We do not see how the court could have arrived at any other conclusion from this evidence. And the defendant ought to account to the plaintiff. Under this decree, in the accounting the defendant will have ample opportunity to protect all his rights. He must, of course, show what his expenses were, that is, what it cost him to carry the place, and must also show what he received from Simpson, the purchaser of the real estate, and after this has been done, the court will find what, if anything, is due the plaintiff under the accounting from the defendant.

We have examined the authorities cited by the defendant, have gone carefully over them, and we find nothing therein that should cause us to reverse this decision of the lower court. For these reasons the decision is hereby affirmed, and the district court will proceed in the accounting matter in the ordinary course of such things.—Affirmed.

DONEGAN, C. J., and RICHARDS, MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.