JOHN PAP et al., appellees, v. GERRIT PAP et ux., appellants.

No. 48764.

(Reported in 73 N.W.2d 742)

December 13, 1955.

Diamond & Jory, of Sheldon, for appellants.

Fisher & DeWaay, of Rock Rapids, for appellees.

PETERSON, J.—This is an action in equity by plaintiffs to quiet title to an eighty-acre tract and to create a trusteeship in the fee titleholder, Gerrit Pap, on behalf of himself and plaintiffs and his codefendant, Walter J. Pap. It is the claim of plaintiffs that although the father of plaintiffs and defendants had executed a warranty deed conveying said land to said Gerrit Pap in 1933, said deed, in fact, only created a naked title in the grantee and that by reason of actions of the grantor during his lifetime, and also of the grantee during such period and after the death of the grantor, a trust relationship was established in favor of the seven children of the grantor who were the residuary beneficiaries under the codicil to his will. The district court entered a decree in favor of plaintiffs and defendants Gerrit Pap and wife have appealed.

Dries Pap was a farmer in Lyon County, Iowa, and up to 1933 he had accumulated a rather extensive acreage of farm land, although all of said land was subject to some mortgage indebtedness. He was the father of eight children by his first marriage: John Pap, Andrew Pap, Henrietta Van Engen, Nellie Van Engen, Dora Van Engen, Walter Pap, Albert Pap and Gerrit Pap. Gerrit Pap was the youngest child and in 1933 was about eighteen years of age and was living at home with his father and his stepmother. The mother of the eight children had died sometime before said year and Dries Pap had remarried. All of the other children outside of Gerrit had married and left home and in 1933 most of them lived in the vicinity of the property involved in this action. Later several of them moved to California.

On March 25, 1933, Dries Pap had his banker at Doon, Iowa, prepare a warranty deed under which deed he conveyed to his son, Gerrit Pap, an eighty-acre tract described as E½ of SW¼ of Section 20, Township 98 North, Range 45 West of the 5th P.M., in Lyon County, Iowa. He signed this deed alone because

he had entered into a prenuptial agreement with his second wife, under the provisions of which it was not necessary for her to join in the conveyance as to any of his land. This eighty acres was a part of two hundred and forty acres owned by said Dries Pap in said area and was known as the middle eighty. There was a mortgage against the property at the time of the execution of said deed of $2100, and the deed was executed subject to said mortgage, but there was no assumption clause in the deed as to the grantee. The consideration set out in the deed was $1000.

Dries Pap and his wife, with Gerrit Pap living at home, continued to occupy the buildings and to farm the farm involved until 1936, when Gerrit Pap was married. Mr. and Mrs. Dries Pap then moved to Doon, Iowa, to make their home.

In 1936 the mortgage against the property was increased from $2100 to $3000, and because he held the fee title this mortgage was executed by Gerrit Pap and his wife. There was no change of mortgagee and said mortgagee required in connection with the execution of the new mortgage and approval of title that a quitclaim deed be executed by Dries Pap and his second wife to Gerrit. The record is not completely clear as to who received the difference of $900, but the indication is that Gerrit Pap received it because later in a written statement, which will be described hereinafter, Gerrit Pap stated that the $1000 consideration in the deed had been repaid to him. After Dries Pap moved to town Gerrit Pap did not take possession of the full eighty acres, and never did until after his father's death. He occupied the buildings and had possession of approximately the south forty acres of the eighty, but he rented another thirty-two acres adjoining said forty from his father. As far as the actions of the grantor are concerned the commencement of the trust situation involved in this action commenced immediately after the deed was made, because grantor continued to farm the eighty until he moved to town. It continued through rental after Dries Pap moved to town and Gerrit and his wife proceeded to farm the forty acres with the adjoining thirty-two acres. During all of the years from 1936 until May 26, 1952, when Dries died, neither grantor nor grantee paid any attention to the deeds.

Gerrit paid rent to his father on this seventy-two-acre tract, which included forty acres covered by the deeds referred to above. He paid rent on the basis of $7 per acre. Appellants admitted that money was paid by Gerrit to Dries regularly throughout the years, but they argued that Gerrit only paid money to his father when he needed it, and in uneven amounts from time to time. However, this point is definitely settled by the testimony of Gerrit Pap himself under cross-examination. He stated that he paid his father annual rent at the rate of $7 per acre. Appellants also urge the point that Gerrit paid the interest on the mortgage throughout the years, but this point was settled by Gerrit in his testimony when he stated that the amount of the interest paid by him was deducted each year from the total rent which he paid his father. Gerrit also stated in his testimony that throughout the years his father paid the taxes on the eighty-acre tract, although by reason of the title standing in the name of Gerrit the tax receipts were made out in his name.

On May 26, 1952, Dries Pap departed this life testate. In his will dated February 5, 1930, he made three specific bequests of $1000 each to three of his children, one of them being Gerrit. He then divided the residue as among his eight children. The amount his second wife, Maria, was to have had already been established in the prenuptial agreement. He appointed John as the executor of the estate. Later, on October 10, 1941, he executed a codicil to his will in which he did not change the three specific bequests, but under which he made a specific bequest of $500 to his son Albert. He divided the residue of his estate as among his seven other children, heretofore named. John had moved to California so he appointed Walter Pap and Gerrit Pap as executors of his estate.

After the funeral the children had a meeting at the home of Walter Pap for the purpose of the reading the will and codicil. Same were duly read. While apparently there had not been general knowledge in the family with reference to the deed executed by Dries Pap to his son Gerrit, some of them knew about it and Gerrit was asked about the deed. He had brought the deed with him so he passed it around for his brothers and sisters to look at it. This became the basis of some discussion

and some harsh words among the members of the family. There was considerable discussion concerning payment of gift tax.

John Pap who lived in California had returned for his father's funeral and he was staying at the home of Gerrit Pap. The next day after the meeting above-described Gerrit informed John that he would be willing to buy the eighty acres from the family on the basis of $300 per acre. Another meeting was then held at Gerrit Pap's home and while some of the members of the family thought this price was too low, yet they finally all agreed to sell their undivided interest in the land to Gerrit on said basis. Three of the brothers, John, Walter and Andrew and a brother-in-law, Herman Van Engen, proceeded to a law office at Rock Rapids and had a lawyer prepare a contract for the sale of the eighty-acre tract to Gerrit at $300 per acre. This was on June 5, 1952. Settlement was to be made on March 1, 1953, or at the time of the closing of the estate, whichever date was the earlier. Details of the settlement were not too clear in the contract and for that reason the trial court did not decree specific performance. However, it was a contract of purchase, signed by all parties, including Gerrit and his wife.

For the farm year from March 1, 1952 to March 1, 1953, Gerrit paid the interest on the mortgage from estate funds and paid the taxes from estate funds and paid a part of the rent to the estate, although it appears from the record that there is $400 of rent still unpaid.

Andrew Pap and Gerrit Pap retained the firm of Hindt & Hindt in Rock Rapids as attorneys in the estate. Andrew was not able to do very much work in connection with the administration of the estate because he was sick, and not too long after his appointment he departed this life. The plaintiff Henrietta Pap is his widow and she was the sole beneficiary under his will and stepped into his shoes in connection with the controversy concerning this land. Gerrit, therefore, had to take care of most matters in connection with the estate and he signed the inventory. In the inventory, duly verified by him, he had the attorneys for the estate place the following statement concerning the eighty acres involved in this action: "E½ of the SW¼ of Section 20, Township 98 North, Range 45 West of the 5th P.M., in Lyon County, Iowa, subject to easements for highway; con-

veyed to Gerrit Pap on March 25, 1933, by warranty deed for $1000, subject to all liens and encumbrances. This land handled as though it belonged to Dries Pap and legal title only was in Gerrit Pap. Dries Pap collected all income and paid all taxes, including income tax, and paid all expenses. Gerrit Pap lived on the farm and paid rent each year and has been reimbursed his $1000.00."

There is some contention on the part of appellants that Gerrit did not comprehend the significance of this statement and also that an attorney whom his brother Albert had secured for him had requested the attorneys for the estate not to file the inventory, but the fact remains, and is not disputed, that the information as above set out and placed in the inventory was given to the attorneys for the estate by Gerrit. He was the only person who could give them the information, and while he changed his mind later and took a position which led to the commencement of this action, yet it is obvious that the statement he made to the attorneys for the estate shortly after his father's death and shortly after he entered into the contract of purchase was a statement of the truth of the matter.

Shortly after the father's death, when the contract of purchase was made, and the inventory in the estate was prepared and signed, the truth prevailed. It was much later when, for some reason, the brother Albert stirred up trouble, and other influences entered in, that the theory of an absolute conveyance crept into the situation.

Dries Pap died in May of 1952. The proceedings and actions as heretofore set out then took place. Nothing happened for almost a year except that Gerrit Pap, after he signed the contract of purchase, went into possession of the full eighty acres of land and fenced it and made quite extensive improvements upon the buildings. Almost a year later his brother Albert consulted a lawyer at Sheldon by the name of Wolff. Albert brought Mr. Wolff to Gerrit's farm to see him and it would appear that Albert was the one who was principally interested in the matter of Gerrit not fulfilling his contract. Gerrit did agree at said time, however, that it would be all right for Mr. Wolff to write a letter to all of the other heirs advising them that he did not

desire to fulfill his contract and Mr. Wolff wrote such letter. Nothing more happened with reference to the matter for almost another year, except that in the meantime the attorneys for the estate were completing the matter of computing and adjusting and paying the federal estate tax including the tax on the eighty acres in question, and the specific bequests payable under the will and codicil. The other children had purchased the remaining land in the estate and they had made some payments so that there was sufficient money to pay estate debts and fees and federal estate tax and the specific bequests. In April of 1954 the attorneys for the estate prepared the final report. In connection with said final report Gerrit insisted that a statement should be placed in said report showing that he was claiming absolute ownership of the land. Under Order of Court, hearing as to final report was set down and notices were sent to all of the beneficiaries under the will and codicil. Plaintiffs filed objections to the final report by reason of Gerrit's statement in same, and also on account of some other minor matters which they did not approve. On the same day the hearing on the final report was to come up, this action was started and the matter has been in court since said time.

Counsel for appellants emphasize the fact that during the years the title to the eighty stood in the name of Gerrit he executed an easement to the electric line, and sold a small tract of about an acre to the Highway Commission. Holding the title in his name, it was necessary for him to sign these documents. He also made a few very modest repairs. These matters are not of sufficient importance to overcome the clear and convincing evidence as to the existence of a trust. Sometime prior to the execution of the deed to Gerrit to the eighty-acre tract, Dries seemed to be in the habit of deeding farms to his children. They were all deeded back to him except this eighty. The general testimony was that it had been for protective purposes, and in the family discussion one of the children suggested that this was true as to the eighty acres involved herein. This may have some significance, but is not a controlling factor.

One of the propositions urged by attorneys for appellees is that careful consideration should be given to the decision of the trial court, by reason of said court hearing the evidence and

observing the demeanor of the witnesses. This principle is correct but is not important in this case because after all the evidence is taken into consideration, including cross-examination of the witnesses and all the exhibits, there is very little conflict of testimony in the case. All pertinent facts are admitted.

In the final analysis there are only two legal questions involved in this case:

1st: Do the actions of grantor and grantee in the deed, verbal statements made by all parties concerned and written documents signed by the grantee in the deed, create a trust relationship, fixing the actual ownership of the eighty-acre tract in the seven residuary legatees of Dries Pap?

2nd: Was plaintiffs' action barred by the Statute of Limitations, or was their interest in the property lost through laches?

I. The attorneys for both appellants and appellees argued at length concerning the matter of trusts and the type of trust involved herein. They cited many cases with reference to constructive trusts and resulting trusts and express trusts and implied trusts, all of which argument was instructive but most of it was not too pertinent to the situation involved in this case.

From some definitions it might be said that an express trust was established. There was no such trust established by any provisions of the original deed. However, Gerrit Pap signed two statements that definitely "expressed" his relationship with his brothers and sisters as being that of a trustee as to the eighty-acre tract in question. The trial court called it a trust by implication, and this we believe is technically correct. This takes into consideration not only Gerrit's statements in writing, but also all of the actions of both Dries and Gerrit for nineteen years, and all other acts and statements with reference to the situation.

In the case of Gilmer v. Gilmer, 199 Iowa 748, 753, 202 N.W. 527, 529, the court states: "It is not necessary that the word 'trust' or 'trustee' be used, in order to create a trust." Further: "It is equally true that no formal or technical words are necessary, to create a trust." Supported by citation of ten cases, all from other jurisdictions.

The question of a trust of the nature of the one involved in this case was discussed in case of Nolan v. Guggerty, 187 Iowa

980, 984, 174 N.W. 706, 708. In said case there were oral state-ments of various types made concerning the transaction and there was a written allegation in the inventory in a guardian-ship. The court stated as follows:

"Whatever may be the requisites of a formal declaration of trust, the foregoing statements and the solemn written allega-tions of the inventory and in the application to sell are the clearest of proof on two propositions: First, that while there was a formal deed, the land was never conveyed; second, these alle-gations are clear proof that the trust was executed. The appli-cation itself is such execution. And such admissions as these were admissible where the trust has been executed. Ratigan v. Ratigan, 181 Iowa 860 [162 N.W.580, 165 N.W.85]."

In the case of Neilly v. Hennessey, 208 Iowa 1338, 1341, 220 N.W. 47, 48, the court stated: "It has been repeatedly held by this court that an oral express trust in real property is not void, but provable only by an instrument in writing. The rule thus stated is no more firmly established than are the rules that the admission of the trust by the grantee or the full or partial performance thereof takes the transaction out of the statute, and permits proof by parol both of the fact of the ad-mission and of the performance."

We find the following statement and citations in the more recent case of Hardy v. Daum, 219 Iowa 982, 987, 259 N.W. 561, 563: "The rule of law that an express trust in real estate can-not be established by parol is so well established in this state that a citation of authorities thereon is unnecessary. It is also the settled rule of law in this state that parol evidence is com-petent to impress an express trust upon an absolute deed, pro-vided the trust has been wholly or partially executed. Ratigan v. Ratigan, 181 Iowa 860, 162 N. W. 580, 165 N.W. 85; Hayes v. Dean, 182 Iowa 619, 164 N. W. 770; Nolan v. Guggerty, Admrx., 187 Iowa 980, 174 N.W. 706; Kelley, Admr. v. Kelley, 189 Iowa 311, 177 N.W. 45; Neilly v. Hennessey, 208 Iowa 1338, 220 N.W. 47; Johnston v. Jickling, 141 Iowa 444, 119 N.W. 746; Morris Furn. Co. v. Braverman, 210 Iowa 946, 230 N.W. 356; Schurz v. Schurz, 153 Iowa 187, 128 N.W. 944, 133 N.W.

683; McCormick Harv. Machine Co. v. Griffin, 116 Iowa 397, 90 N.W. 84."

In this case the trust was at least partially executed. When Gerrit Pap signed and verified the inventory in his father's estate he, in fact, stated that he was holding the eighty-acre tract in trust. He reinforced the trust position when he entered into a written contract with his brothers and sisters to purchase their interest in the eighty-acre tract involved.

An implied trust is quite clearly defined in 89 C.J.S., Trusts, section 13, pages 724, 725, as follows: "Implied trusts are usually defined as those which, without being expressed, are deducible from the nature of the transaction as matters of intent, or which are superinduced on the transaction by operation of law as matters of equity, independently of the particular intention of the parties. However, some definitions disregard the element of intent and define these trusts to be such only as arise by operation of law. By some authorities the term 'implied trusts' is used in a sense exclusive of resulting and constructive trusts to designate a form of express trusts."

We should not lightly engraft on a deed of conveyance the existence of a trust relationship. We recognize the fact that to establish such a condition the testimony must be clear and convincing. It can be written or parol and by actions of the parties, as it is in this case. In the facts of this case we hold that such clear and convincing evidence exists.

II. Attorneys for appellants argue at length and cite many cases on the question of the action being barred by the Statutes of Limitations, both general and special. Having decided that a trust relationship exists, this argument and these cases do not apply.

The possession of the trustee was for the benefit of his cestuis que trust, and could not be adverse thereto until he repudiated the trust. The earliest date that could possibly be set for such repudiation was April of 1953, when he authorized an attorney to write his brothers and sisters that he did not contemplate performance of his contract.

Gerrit claimed however that he did not hire this attorney until a year later, when the question of hearing on final report in the estate came before the court. Under these conditions it

would, therefore, be correct to say that it was April of 1954, when he alleged absolute ownership in his final report as executor. At said time he specifically repudiated any trust relationship. Either date is recent however and is not affected by the statute.

This position has been repeatedly announced by this court and has been very definitely stated in two recent cases. In the case of Howes v. Sutton, 221 Iowa 1326, 1330, 268 N.W. 164, 166, this court stated as follows:

"It is an elemental principle of law that as between trustee and cestui que trust, in the case of an express trust, the statute of limitations has no application, and no length of time is a bar. Against an express and continuing trust, time does not run until repudiation or adverse possession by the trustee and knowledge thereof on the part of the cestui. This general principle is laid down in Long v. Valleau, 87 Iowa 675, 55 N.W. 31, 34, 56 N.W. 748. The court said in its opinion, page 684 of the report:

" 'The property in controversy, if not owned by the defendant, was held by her in trust. She was then, in law, a trustee holding property for the benefit of the real owner, Frank Teabout, and after his death she would hold it in trust for his estate. Now, the general rule is that the possession of property by the trustee, which is subject to the trust, is, in law, the possession of the cestui que trust.' This rule is supported by 2 Perry on Trusts, p. 1468, sec. 863; Murphy v. Murphy, 80 Iowa 740, 45 N. W. 914; Blackett v. Ziegler, 147 Iowa 167, 125 N.W. 874; Carter v. Cohen Bros. Iron & Metal Co., 181 Iowa 588, 164 N.W. 1040; Carr v. Craig, 138 Iowa 526, 116 N.W. 720."

In the recent case decided by this court in December of 1954, of Boehnke v. Roenfanz, 246 Iowa 240, 246, 67 N.W.2d 585, 590, the trust was established by written agreement of the parties on November 7, 1932. It was not finally repudiated until 1952. In connection with the question of the statute of limitations it was stated in said case as follows:

"It is elementary that as between the trustee and cestui que trust of an express trust, statutes of limitations have no appli-

cation. Possession by the trustee of trust property is, in law, possession of the cestui que trust. As against an express and continuing trust, time does not run until repudiation or adverse possession by the trustee and knowledge or notice thereof to the cestui. Howes v. Sutton, 221 Iowa 1326, 1330, 268 N.W. 164, and citations; Zunkel v. Colson, 109 Iowa 695, 698, 81 N.W. 175; Rorem v. Rorem, 244 Iowa 980, 989, 59 N.W.2d 210, 215; 34 Am. Jur., Limitation of Actions, sections 107 and 175; 53 C. J. S., Limitations of Actions, section 19(a); 54 C. J. S., Limitations of Actions, section 178; Bogert on Trusts and Trustees, section 951, pages 200 to 202."

█ █ Plaintiffs are not guilty of laches in the commencement of their action. It definitely follows that if the action is not barred by the statute of limitations no condition of laches can be reasonably claimed. Laches further contains within its connotation the proposition that because of undue passage of time the adverse party suffered prejudice. It cannot be claimed in this case that Gerrit suffered any damage. Gerrit was not ousted from the land in any way. His possession was not disturbed pending the final outcome of this case.

The same question was considered in Boehnke v. Roenfanz, supra, where the court stated at page 248 of 246 Iowa, page 591 of 67 N.W.2d, as follows: "What has been said with reference to the claimed bar by statutes of limitations is, in general, applicable also to the pleaded defense of laches. Laches has been defined as such delay in enforcing one's rights as works a disadvantage to another. The trial court concluded that since the general statute of limitations had not run and there was not sufficient evidence of any hardship or detriment to Walter because of laches or acts of plaintiffs, and considering the relationship of brother and sisters, this was not a proper case for a court of equity to apply the doctrine of laches. We agree with this conclusion. Lutton v. Steng, 208 Iowa 1379, 227 N.W. 414; 54 Am. Jur., Trusts, section 580; Restatement of the Law, Trusts, 629, 630, section 219; 30 C. J. S., Equity, section 129; 19 Am. Jur., Equity, section 498 et seq."

█ In one count plaintiffs prayed for establishment of a trust relationship as between Gerrit Pap and plaintiffs and co-

defendant Walter J. Pap as to this eighty-acre tract. In another they prayed for quieting of title in the seven residuary legatees. The trial court granted the prayer of the petition as to these two counts, which we approve by this decision.

Plaintiffs had another count in their petition in which they prayed for specific performance of the contract of purchase entered into by Gerrit Pap with his brothers and sisters. This the trial court denied on the ground that there were some provisions in the contract as to mode of settlement, which had not been definitely agreed upon therein. We approve the trial court's position as to this count. We have established the ownership of the property, and the parties can either agree as to details or pursue their statutory remedy. Furthermore, plaintiffs did not file any cross-appeal as to this adverse ruling.

It further appears from the record that Gerrit Pap owed a balance of $400 rent for the year he rented from the estate ending March 1, 1953. This was not seriously in dispute. Depending on establishment of the trust, which we are doing, we approve the judgment of the trial court for this balance.

We hold that while Gerrit Pap holds the naked title through the deeds executed to him, yet he holds such title as trustee for his brothers John and Walter, his sisters Henrietta, Nellie and Dora, his sister-in-law, Henrietta Pap, as sole beneficiary under will of his brother Walter, and himself, one seventh each, as residuary legatees under the codicil to will of Dries Pap, deceased. The title is quieted in them in said proportions.

The decision of the trial court is affirmed.—Affirmed.

All JUSTICES concur.