**In re Gary Lee SMITH, Debtor.**

**Gary Lee SMITH, Appellant,**

v.

**M & M COMMODITIES, INC., Appellee.**

**No. C 85–4202.**

United States District Court, N.D. Iowa, W.D.

March 11, 1987.

Donald H. Molstad, Sioux City, Iowa, for appellant.

Kurt Hohenstein, Kurt Rager, South Sioux City, Neb., for appellee.

## ORDER

### DONALD E. O'BRIEN, Chief Judge.

This matter comes before the Court on Debtor Gary Lee Smith's appeal from a decision by Bankruptcy Judge William Hill that Smith's debt to Appellee M & M Commodities is not dischargeable under § 523(a)(4) of the Bankruptcy Code. 11 U.S.C. § 523(a)(4) (1982). This appeal was heard on November 10, 1986. For reasons stated below, the Court affirms the Bankruptcy Court's decision.

The debtor was employed as a commodities broker for M & M Commodities from June 1982 to May 29, 1984. When hired, Smith was given a set of rules and regulations issued by the Geldermann clearinghouse, where M & M's orders would be sent after their brokers obtained them on behalf of clients. The rules and regulations prohibited "discretionary trades," which are trades made on behalf of a customer but without specific authority from the customer for that purchase.

Judge Hill found that Smith made five discretionary trades, all without written authority from customers as the rules required. These customers refused to pay their accounts to Gelderman. Because M & M was the guarantor for these accounts, it bore the cost of Smith's discretionary trading.

To repay M & M for this loss, Smith executed a note for $17,461.89 with M & M as the payee. This sum included the amount of the commissions Smith had received from the unauthorized trades. At the time Smith filed for bankruptcy, $11,335.61 was owing on the note.

M & M filed a complaint with the Bankruptcy Court seeking to have the debt declared non-dischargeable under § 523(a)(4), which states:

> (a) A discharge under §§ 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt— ...
>
> (4) For fraud or defalcation while acting in a fiduciary capacity;

11 U.S.C. § 523(a)(4) (1984).

Judge Hill found that the debt in question would not be dischargeable under this section because Smith was acting as a fiduciary for both M & M and its customers. Because the losses resulted from Smith's failure to follow the rules for trading on discretionary accounts, they resulted from "defalcation" in a fiduciary capacity. Smith appeals.

The first question for the Court to resolve is whether Smith was "acting in a fiduciary capacity" in the proper sense of that term when he made the discretionary trades. As an agent for M & M, Smith owed certain fiduciary duties to his employer. *Des Moines Bank and Trust Co. v. Bechtel and Co.*, 243 Iowa 1007, 51 N.W.2d 174, 215 (1952). As a broker, M & M in turn owed fiduciary duties to its customers. *Menzel v. Morse*, 362 N.W.2d 465 (Iowa 1985). However, the "fiduciary capacity" needed to make a debt non-dischargeable under § 523(a)(4) must arise from an express or technical trust. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934). In deciding whether an express or technical trust existed, courts must look to relevant non-bankruptcy law. *In the Matter of Dloogoff*, 600 F.2d 166, 169 (8th Cir.1979).

M & M presents several possible sources for a technical trust between Smith and M & M or its customers. The first source is the federal Commodity Exchange Act, 7 U.S.C. § 1, *et seq.*, which regulates activities between commodity futures brokers and their customers. Section 6d(2) of the Act required Smith as a registered merchant to treat all money of his customers

as belonging to the customer, without commingling it, and prohibited Smith from using customer funds as his own. Regulations promulgated by the Commodity Futures Trading Commission prohibited Smith from trading without specific authorization by the customer or prior written consent. 17 C.F.R. § 166.2 (1984).

The Court finds that the Act and regulations created a technical trust between Smith and his customers. There are no magic words which must always be used in order to create a trust. *Pap v. Pap*, 247 Iowa 371, 73 N.W.2d 742 (1955). A trust can arise from the fact that one lawfully holds funds of another for the purposes of a trust. *Simon v. Simon*, 141 Neb. 839, 5 N.W.2d 140 (1942). Because federal law provided M & M's customers with most if not all of the protection which an express private trust could provide, bankruptcy courts may treat a breach of that relationship as seriously as a breach of an express private trust.

The only remaining question to decide is whether Smith's act constituted "defalcation." Defalcation includes a broad range of misfeasance:

> It is broader than embezzlement or misappropriation. It can be a mere deficit resulting from the debtor's misconduct, even though he derived no personal gain therefrom. 3 *Collier on Bankruptcy* § 523.14[1][b] (1983). It is the slightest misconduct, and it may not involve misconduct at all. Negligence or ignorance may be defalcation. . . .

*In re Cowley*, 35 B.R. 526, 529 (Bankr.Kan. 1983). No element of intent or bad faith need be shown. *In re Martin*, 35 B.R. 982, 989 (Bankr.E.D.Pa.1984). The Court finds no error in the Bankruptcy Court's finding that Smith's actions constituted defalcation.

IT IS THEREFORE ORDERED that the Bankruptcy Court's judgment is affirmed.